1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

HON. JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

VICTOR WASHINGTON,

Plaintiff,

vs.

STARBUCKS CORPORATION,

Defendant.

No. C08-1144 JCC

NOTE DATE: July 10, 2009

**PLAINTIFF'S OPPOSITION TO ATTORNEY LIEN CLAIMANT "MOTION REGARDING ATTORNEY'S LIEN"**

Plaintiff Victor Washington ("Washington") respectfully submits his response in opposition to his former lawyers Frank Freed's "Motion Regarding Attorney's Lien" as follows:

## I.    INTRODUCTION

Plaintiff Washington participated in a settlement mediation several months ago which resulted in a settlement of his discrimination claims incorporated into a CR2A Agreement. The peculiar part of all this is that while paragraph 3 of the CR2A Agreement purports to establish the amount of the settlement at $120,000, the very written agreement contains handwritten notations in the body of the typed document, in the handwriting of plaintiff's then counsel, Joyce Thomas, one of which reads, "$20,000 attorney's fees." Plaintiff will testify that when

**PLAINTIFF'S OPPOSITION TO ATTORNEY LIEN CLAIMANT "MOTION REGARDING ATTORNEY'S LIEN"  - 1 of 13**

LAW OFFICES
MICHAEL R. CARYL, P.S.
A PROFESSIONAL SERVICES CORPORATION
18 West Mercer Street, Suite400
Seattle, Washington 98119
Phone: (206) 378-4125  Fax:  (206) 378-4133
michaelc@michaelcaryl.com

he was presented with the draft agreement for only $120,000, he refused to sign it unless more money was paid for his attorney's fees.  He states that he discussed the need for the settlement to be greater with Ms. Thomas, and then Ms. Thomas discussed this with representatives of defendant Starbucks.  Plaintiff told Ms. Thomas that he would accept no less than $20,000 for attorney's fees and, according to Plaintiff, the result was an agreement by Starbucks to pay an additional $20,000 for attorney's fees, which he learned from Ms. Thomas.  Ms. Thomas made the "$20,000 attorney's fees" notation at the end of paragraph 4, and the parties then signed the CR2A Agreement.  Plaintiff contends that the settlement was for a total of $140,000, not $120,000.  Starbucks only tendered $120,000.

What is even more peculiar is that in the two recent motions filed with this Court by Starbucks and Frank Freed, the Starbucks Motion to Enforce, and the Frank Freed Motion regarding Attorney's Lien, the lawyers involved, all of who participated in the mediation, dance around this obvious ambiguity and do not address it in any way.  The Starbucks attorney who signed the declaration supporting the Motion to Enforce, Ms. Peterson, attaches the CR2A Agreement with the handwritten notation but ignores it and the Starbucks motion itself at page 2 does not mention it in any way.  It would seem that the Court would at the least have to hold an evidentiary hearing to determine what was actually agreed as the settlement amount, before enforcing any settlement agreement.

Plaintiff Washington later approached undersigned counsel regarding the attorney's lien issue only.  Undersigned counsel declined to get involved in the Motion to Enforce the Settlement Agreement, and was informed by Plaintiff that he had another attorney who was

PLAINTIFF'S OPPOSITION TO ATTORNEY LIEN
CLAIMANT "MOTION REGARDING
ATTORNEY'S LIEN"  - 2 of 13

LAW OFFICES
MICHAEL R. CARYL, P.S.
A PROFESSIONAL SERVICES CORPORATION
18 West Mercer Street, Suite400
Seattle, Washington 98119
Phone: (206) 378-4125  Fax:  (206) 378-4133
michaelc@michaelcaryl.com

1   representing him on that aspect.  Undersigned counsel, in fact, confirmed that in talking with

2   Washington's other counsel by telephone on Monday, June 29, 2009.  Undersigned counsel

3   then appeared herein for the limited purpose of addressing only the attorney's lien issues.[1]

4

## II.    AUTHORITIES AND ARGUMENT

5

6   ### A.    The Lien Motion is Will Be Contested.

7        The Frank Freed efforts to enforce the firm's claim of attorney's lien, once it is properly

8   brought  before the Court, will be vigorously contested.  The limited relief sought by Frank

9   Freed on this current motion is a court order canceling the earlier check  for $120,000 delivered

10  to Plaintiff and the issuance of two new checks, one in the amount of  $31,683.96, the amount

11  liened by Frank Freed.  The final sentence of the Frank Freed motion reads, "This purposed

12  (sic) course of action will preserve the attorney's lien until the rights to the $31,683.96 in

13  attorney's fees and costs may be adjudicated by the Court, *if necessary*."  This is a curious

14  qualifier, because an attorney's lien is not self-executing and an adjudication is absolutely

15  necessary where the reasonableness of the attorney's fees claimed is, as is the case here, in

16  issue.

17

18       Frank Freed offers the Court no attorney's fee history to this case, but the law firm did

19  not take the case on a contingency fee basis, as is typical, but rather hourly.  The Frank Freed

20  Fee Agreement is attached to the Declaration of Victor Washington at Exhibit A.  In fact, the

21  Fee Agreement makes clear that the scope of the engagement was quite limited, where the firm

22

23

24  _____

[1] Undersigned counsel's practice is limited to disputes over lawyers fees and expert testimony relating to lawyers
25  fees and ethical aspects of lawyers fees and billings. See www.michaelcaryl.com

**PLAINTIFF'S OPPOSITION TO ATTORNEY LIEN
CLAIMANT "MOTION REGARDING
ATTORNEY'S LIEN"  - 3 of 13**

LAW OFFICES
MICHAEL R. CARYL, P.S.
A PROFESSIONAL SERVICES CORPORATION
18 West Mercer Street, Suite400
Seattle, Washington 98119
Phone: (206) 378-4125  Fax:  (206) 378-4133
michaelc@michaelcaryl.com

would seek to obtain a transfer within Starbucks with a new supervisor or "a separation package that the Client finds acceptable." Another clause of the Fee Agreement states,

> "Pursuant to the Rules of Professional Conduct 1.2(c), the Attorney's limit the scope of the representation to the issues directly related to the matters described in the second paragraph. **By entering into this agreement, the Attorney's do not agree to represent the client in any litigation or arbitration proceeding without a separate and distinct fee agreement for such purpose.** (Emphasis added)

The Frank Freed limited-scope hourly fee agreement is the only Fee Agreement ever executed; nonetheless, the lawyers took the case into litigation and got close to trial with nothing but a limited scope hourly fee agreement. In fact, Washington will present evidence at the lien foreclosure hearing in this case that Frank Freed did orally agree to convert to a contingency fee basis at some point after his fees got very high but would not formally carry through on that agreement.

Frank Freed did not enlighten the Court with details of its charging of fees before the CR2A Agreement was reached with Starbucks, and probably for good reason. Attached at Exhibit B to the Washington Declaration is an email from the Frank Freed Bookkeeper confirming that the amounts Washington has already paid total $48,435.33, in addition to the recent invoices that are subsumed into the attorney's lien claim of $31,683.96. Frank Freed would charge this client a total of **$80,119.00**, which amounts to two-thirds of the entire recovery under the CR2A Agreement.

In Washington, a lawyer may not charge or seek to collect an unreasonable or excessive fee. RPC 1.5(a) is the governing rule:

**PLAINTIFF'S OPPOSITION TO ATTORNEY LIEN CLAIMANT "MOTION REGARDING ATTORNEY'S LIEN"  - 4 of 13**

LAW OFFICES
MICHAEL R. CARYL, P.S.
A PROFESSIONAL SERVICES CORPORATION
18 West Mercer Street, Suite400
Seattle, Washington 98119
Phone: (206) 378-4125  Fax:  (206) 378-4133
michaelc@michaelcaryl.com

(a) **A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses.** The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services;

(8) whether the fee is fixed or contingent; and

(9) the terms of the fee agreement between the lawyer and the client, including whether the fee agreement or confirming writing demonstrates that the client had received a reasonable and fair disclosure of material elements of the fee agreement and of the lawyer's billing practices. (Copy attached at **Appendix A.**)

"Reasonableness is the ethical standard for Fees. RPC 1.5(a). The Washington Supreme court has overruled a line of cases based on the 'clearly excessive' standard set forth in the former Code of Professional Responsibility, affirming that reasonableness is now the standard. (Citations omitted)"

WSBA Ethics Desk Book, §3.3, at pp. 3-7 through 3-13. The Desk Book makes clear that the reasonableness standard is heightened because of the lawyer's fiduciary duties owed to the client. (Copy attached at **Appendix B.**) At the time Frank Freed billed Plaintiff for these fees, the firm owed fiduciary duties toward its client. Those fiduciary duties regarding billing extend beyond the end of the relationship, as RPC 1.5(a) forbids seeking to collect an excessive or unreasonable fee.

**PLAINTIFF'S OPPOSITION TO ATTORNEY LIEN CLAIMANT "MOTION REGARDING ATTORNEY'S LIEN" - 5 of 13**

LAW OFFICES
MICHAEL R. CARYL, P.S.
A PROFESSIONAL SERVICES CORPORATION
18 West Mercer Street, Suite 400
Seattle, Washington 98119
Phone: (206) 378-4125  Fax: (206) 378-4133
michaelc@michaelcaryl.com

Lawyer-client fee agreements are unlike any other contract. The attorney owes a client the "highest" duty of fidelity, good faith and undivided loyalty, and the relationship is one of special trust and confidence. *In the Matter of the Estate of Larson*, 103 Wn.2d 517, 520, 694 P.2d 1051 (1985); *Perez v. Pappas*, 98 Wn.2d 835, 839-840, 659 P.2d 475 (1983). The fee agreement between lawyer and client is not an ordinary business contract, because the legal profession "has both an obligation of public service and duties to clients which transcend ordinary business relationships and prohibit the lawyer from taking advantage of the client." *Holmes v. Loveless*, 122 Wn. App. 470, 478, 94 P.3d 338 (2004). Lawyers have a duty to always act for the client's best interests and to honor the client's trust and confidence by always acting in complete honesty and good faith. These duties require full communication and candor. *Kelley v. Foster*, 62 Wn. App. 150, 154-55, 813 P.2d 598, *review denied*, 118 Wn.2d 1001 (1991).

"A contract for attorney fees must be fair and reasonable, free from undue influence and based upon a full and fair disclosure of the facts upon which it is predicated." *Barr v. Day*, 69 Wn. App. 833, 844, 854 P.2d 642 (1993), *aff'd in part and rev'd in part on other grounds*, 124 Wn.2d 318, 879 P.2d 912 (1994)[citation omitted]. Strong public policy in Washington requires counsel to fully disclose and explain the contingent fee agreement to the client." *Luna v. Gillingham*, 57 Wn. App. 574, 580, 789 P.2d 801 (1990).

A lawyer violates RPC 1.5(a) merely by sending a bill to a client which seeks payment of excessive or unreasonable fees. The lawyer always bears the burden of proof for the reasonableness of fees. See Third Restatement of the Law Governing Lawyers, §42. (Copy

LAW OFFICES
MICHAEL R. CARYL, P.S.
A PROFESSIONAL SERVICES CORPORATION
18 West Mercer Street, Suite400
Seattle, Washington 98119
Phone: (206) 378-4125  Fax: (206) 378-4133
michaelc@michaelcaryl.com

attached at **Appendix C.**)  The burden of proving the reasonableness of the fees is upon the attorney requesting them.  *Herring v. Department of Social & Health Servs.*, 81 Wn. App. 1, 34, 914 P.2d 67 (1996.)  "In addition to establishing entitlement to attorney fees, the party requesting them must also establish they are reasonable." *Absher Constr. Co. v. Kent Sch. Dist.*, 79 Wash. App. 841, 847, 905 P.2d 1229 (1995); *Scott Fetzer v. Weeks*, 122 Wn.2d 141, 859 P.2d 1210 (1993).  Whether attorney's fees are reasonable is a question of fact to be decided in light of the circumstances of each individual case.  *Commercial Credit v. Wollgast*, 11 Wn. App. 117, 521 P.2d 1191 (1974).  "A lawyer should not exploit a fee arrangement based primarily on hourly charges by using wasteful procedures." Comment 5 to RPC 1.5.

RPC 1.5(b) governs the lawyer's obligations of disclosure of fee arrangements at the outset:

> When the lawyer has not regularly represented the client, or if the fee agreement is substantially different  than that previously used  by the parties, the basis or rate of the fee or factors involved in determining the charges for legal services and the lawyer's billing practices **shall be communicated to the client**, preferably in writing, before or within a reasonable time after commencing the representation.(Emphasis added)

The comment to RPC 1.5(b) states, "In a new client-lawyer relationship, however, an understanding as to fees and expenses **must be established**."  Section 38 of the Restatement (Third) of the Law Governing Lawyers re-states the rule similarly, requiring that the basis or rate of the fee **must** be communicated to the client "before or within a reasonable time after hereto at beginning to represent the client . . ."  Comment *b.* to this section provides, "Non-compliance with that duty (to inform the client of the basis or rate of the fee) is enforceable

LAW OFFICES
MICHAEL R. CARYL, P.S.
A PROFESSIONAL SERVICES CORPORATION
18 West Mercer Street, Suite400
Seattle, Washington 98119
Phone: (206) 378-4125  Fax:  (206) 378-4133
michaelc@michaelcaryl.com

1  through professional discipline or by limiting the lawyer's remuneration to the fair value

2  standard in §39 (determined by *quantum meruit*).   (Copy attached at **Appendix D.**)   The

3  mandatory nature of the lawyer's duty to spell out fee arrangements at the outset is discussed in

4  Talmadge and Jordan, <u>Attorney Fees in Washington</u>, at pp.9-11.  The <u>Washington Legal Ethics</u>

5  <u>Deskbook</u>, WSBA (2003), at §3.3 (3), observes, "The Washington Supreme Court recently

6  urged lawyers to 'carefully and clearly construct fee agreements to adequately disclose the

7  nature of the fee and the client's responsibility regarding payment.'   *In re Disciplinary*

8  *Proceedings  Against Kagele*, 149 Wn.2d 793, 808, 72 P.3d 1067 (2003)."

9

10      Undersigned counsel has had less than a week with this case, but he plans on behalf of

11  Washington to explore the details of how this very limited scope hourly representation

12  excluding litigation evolved into a result where the lawyers are seeking to take two-thirds of the

13  entire settlement under the CR2A Agreement sought to be enforced.  There may well be serious

14  issues of disclosure failings by the law firm in violation of RPC 1.5(b), particularly where the

15  law firm strongly urged Washington to take the $120,000 settlement offer.  Plaintiff never

16  imagined he would be paying hourly throughout the case for a discrimination claim usually

17  handled on a contingency, where the written Fee Agreement called for a new Fee Agreement if

18  litigation were commenced.  It is not a stretch to argue that a two-thirds fee in a case where the

19  law firm bore no risk is grossly excessive.

20

21  **B.      The Frank Freed Lien Motion is Premature.**

22      RCW 60.40.010 is the statute creating the lien.  The statute was originally enacted by

23  the Territorial Legislature in 1863, was codified in 1881, and was amended only once, in 2004.

24

25

LAW OFFICES
MICHAEL R. CARYL, P.S.
A PROFESSIONAL SERVICES CORPORATION
18 West Mercer Street, Suite400
Seattle, Washington 98119
Phone: (206) 378-4125  Fax:  (206) 378-4133
michaelc@michaelcaryl.com

The statute creating the lien provides as follows:

> (1) An attorney has a lien for his or her compensation, whether specially agreed upon or implied, as hereinafter provided:
>
> * * *
>
> (d) Upon an action, including one pursued by arbitration or mediation, and its proceeds after the commencement thereof to the extent of the value of any services performed by the attorney in the action, or if the services were rendered under a special agreement, for the sum due under such agreement; and
>
> (e) Upon a judgment to the extent of the value of any services performed by the attorney in the action, or if the services were rendered under a special agreement, for the sum due under such agreement, from the time of filing notice of such lien or claim with the clerk of the court in which such judgment is entered, which notice must be filed with the papers in the action in which such judgment was rendered, and an entry made in the execution docket, showing name of claimant, amount claimed and date of filing notice.

An attorney's lien is nothing more than a security device, providing a statutory security interest in a client's claim or settlement or judgment that results from the claim for compensation for legal services that contributed to the result. There is obviously no judgment here. There is no "settlement" or proceeds until this Court rules on the Starbucks Motion to Enforce the alleged mediated settlement agreement. If this Court, in fact, rules that there is no settlement, there is nothing for this Court to do now with respect to the lien. Frank Freed still possesses its security interest in the "action, including one pursued by arbitration or mediation, and its proceeds . . ." Any further action relating to the attorney's lien must perforce await either an order of this court enforcing the settlement agreement, a litigated result when the case returns to the trial calendar or a new settlement agreement with Starbucks.

### C.   If the Settlement Agreement is Enforced, then the Amount Claimed by Frank Freed should be Deposited to the Registry of the Court or Otherwise Secured.

LAW OFFICES
MICHAEL R. CARYL, P.S.
A PROFESSIONAL SERVICES CORPORATION
18 West Mercer Street, Suite400
Seattle, Washington 98119
Phone: (206) 378-4125  Fax:  (206) 378-4133
michaelc@michaelcaryl.com

1

2      As a security device, the attorney's lien "secures" or ties up the amount of attorney's

3  fees claimed by the lawyer.  A client has the same obligation under the law as does any other

4  player, to respect the claim of lien and to allow the liened item, be it the cause of action,

5  settlement or proceeds, to remain secure.  Undersigned counsel as an officer of the court will

6  respect the lien, as well.  If this Court ultimately does enforce the CR2A Settlement Agreement

7  after an evidentiary hearing, Plaintiff will not oppose the placement of $31,683.96 into the

8  registry of the court.

9

10     **D.      An Adjudication or Foreclosure of the Attorney's Lien is Mandatory.**

11     Again, an attorney's lien is not self-executing and by merely claiming the amount of the

12 lien, the lawyer gains nothing but security.  "In order to realize on a lien, absent agreement with

13 the client, there must be an adjudication respecting the lien."  Rombauer, 27 <u>Washington</u>

14 <u>Practice – Creditors' Rights and Debtors' Remedies</u>, §4.29 at p. 337.   While the attorney

15 asserting the lien may "bring  an action to foreclose and have right to the lien and its

16 reasonableness determined in any proper forum," Rombauer, *supra*, §4.29 at p. 338, the typical

17 manner in which liens are foreclosed is in the action where the legal services were performed.

18

19     Very little has been written on the attorney's lien statute and only a handful of cases

20 have come down interpreting this statute.  Few practitioners have ever filed attorney's liens, let

21 alone undergone a court foreclosure of the lien.  In fact, the only statutory language that even

22 addresses foreclosure is in RCW 60.40.030, a part of the original law enacted by the territorial

23 legislature in 1863.  However, this section of the statute only applies to **possessory** liens, or

24 liens against the money or property of a client in the hands of the attorney.  Expressly, it does

25

LAW OFFICES
MICHAEL R. CARYL, P.S.
A PROFESSIONAL SERVICES CORPORATION
18 West Mercer Street, Suite400
Seattle, Washington 98119
Phone: (206) 378-4125  Fax:  (206) 378-4133
michaelc@michaelcaryl.com

1    not apply to a charging lien such as here.  The Court of Appeals has so held in *Seawest*

2    *Investment Advisors v. King County*, 141 Wn. App. 304, 313, 170 P.3d 53 (2007), where the

3    court ruled:

4

5    > We conclude that a fair reading of the attorney lien statute requires us to hold
     > that the legislature intended the summary procedures set forth in *RCW 60.40.030*
     > to apply only when *RCW 60.40.020* applies. Specifically, the procedures of

6    > *RCW 60.40.030* are triggered when the claimed lien is asserted against money or
     > papers of the client, but not when the lien is asserted against a judgment.

7

8    Nonetheless, Division One in *Seawest* approved the summary adjudication remedy fashioned

9    by the trial court as appropriate in the case of a charging lien such as here.  The court held:

10

11   > Where an attorney lien is claimed against a judgment, the court has a right to
     > determine all questions affecting the judgment in some form of proceeding. A

12   > proceeding to enforce a lien is an equitable proceeding. Courts have broad
     > discretion when fashioning equitable remedies, and we review those remedies

13   > for an abuse of discretion. A trial court abuses its discretion when its decision is
     > manifestly unreasonable or based upon untenable grounds. [21]

14

15                                    * * *

16   > Like the version of Washington's statute that existed when *Angeles Brewing*
     > was decided, the current version of the statute does not set out a procedure for

17   > adjudicating a lien against a judgment. Although the 2004 amendments mention
     > an action to enforce a lien on a judgment in *RCW 60.40.010(2)*, the statute does

18   > not set out a procedure for enforcement. Significantly, the statute does not
     > require that such an action be separate from the underlying proceeding. Thus, it

19   > places the question of how to properly adjudicate the lien with the court,
     > requiring it to fashion some "form of proceeding by which the matters might be

20   > properly adjudicated." [26] Cases since *Angeles Brewing* have cited this principle
     > with approval. [27] Thus, we conclude that the trial court here was authorized to

21   > fashion an appropriate remedy, which it did.

22

23

24

25

**PLAINTIFF'S OPPOSITION TO ATTORNEY LIEN
CLAIMANT "MOTION REGARDING
ATTORNEY'S LIEN"  - 11 of 13**

LAW OFFICES
MICHAEL R. CARYL, P.S.
A PROFESSIONAL SERVICES CORPORATION
18 West Mercer Street, Suite400
Seattle, Washington 98119
Phone: (206) 378-4125  Fax:  (206) 378-4133
michaelc@michaelcaryl.com

*Seawest Investment Advisors, supra,* 141 Wn. App. at 314-15. The case law makes clears that the Court has great discretion in establishing the nature and extent of the hearing, subject to the requirements of due process. See *Krein v. Nordstrom*, 80 Wn. App. 306, 908 P.2d 889 (1995).

### III.   CONCLUSIONS

The Frank Freed motion is premature. The law firm's claim of lien exists and will be respected by Washington and his counsel. There is nothing for the Court to do relating to the law firm's lien claim until there is a decision on the motion to enforce the settlement agreement. Washington will oppose that motion with separate counsel. If the motion is denied, there is nothing further to do respecting the lien claim until there is a resolution of the underlying case. If the Court does eventually enforce the settlement agreement after an evidentiary hearing, then the disputed funds may be placed in the registry of the Court and the Court can determine how it will conduct the process of foreclosing the law firm's lien, as is discussed above.

RESPECTFULY SUBMITTED this 6th day of July, 2009.

MICHAEL R. CARYL, P.S.

By: _____
Michael R. Caryl, WSBA #7321
Attorney for Plaintiff Washington

### CERTIFICATE OF ELECTRONIC FILING

The undersigned certifies, under penalty of perjury under the laws of the State of Washington, that on the below date I caused filing and delivery via electronic filing with the

**PLAINTIFF'S OPPOSITION TO ATTORNEY LIEN CLAIMANT "MOTION REGARDING ATTORNEY'S LIEN"  - 12 of 13**

LAW OFFICES
MICHAEL R. CARYL, P.S.
A PROFESSIONAL SERVICES CORPORATION
18 West Mercer Street, Suite400
Seattle, Washington 98119
Phone: (206) 378-4125  Fax: (206) 378-4133
michaelc@michaelcaryl.com

1   court delivery of a true and correct copy of the foregoing Opposition to Attorney Lien Claimant

2   "Motion Regarding Attorney's Lien" to all counsel of record, including judge's working copies.

3       DATED this _6th_ day of July, 2009 at Seattle, Washington.

4

5                                               Pamela Hamilton, Legal Assistant

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**PLAINTIFF'S OPPOSITION TO ATTORNEY LIEN
CLAIMANT "MOTION REGARDING
ATTORNEY'S LIEN"   - 13 of 13**

LAW OFFICES
MICHAEL R. CARYL, P.S.
A PROFESSIONAL SERVICES CORPORATION
18 West Mercer Street, Suite 400
Seattle, Washington 98119
Phone: (206) 378-4125  Fax:  (206) 378-4133
michaelc@michaelcaryl.com

# APPENDIX A

LEXSEE WA ORDERS 2008-35

WASHINGTON COURT ORDERS

*WA Orders 2008-35*

THE SUPREME COURT OF WASHINGTON

IN THE MATTER OF THE ADOPTION OF THE AMENDMENT TO RPC 1.5-FEES AND RPC 1.15A-SAFEGUARDING PROPERTY

ORDER

NO. 25700-A-904

The Washington State Bar Association having recommended the adoption of the proposed amendments to RPC 1.5-Fees and RPC 1.15A-Safeguarding Property, and the Court having determined that the proposed amendments will aid in the prompt and orderly administration of justice and further determined that an emergency exists which necessitates an early adoption;

Now, therefore, it is hereby

ORDERED:

(a) That the amendments as attached hereto are adopted.

(b) That pursuant to the emergency provisions of GR 9(j)(1), the amendments will be published expeditiously and become effective upon publication.

DATED at Olympia, Washington this 28th day of October, 2008.

SUGGESTED AMENDMENT

RULES OF PROFESSIONAL CONDUCT (RPC)

RULE 1.5 FEES

(a)-(e) [Unchanged.]

[A> (f) Fees and expenses paid in advance of performance of services shall comply with Rule 1.15A, subject to the following exceptions: <A]

[A> (1) A lawyer may charge a retainer, which is a fee that a client pays to a lawyer to be available to the client during a specified period or on a specified matter, in addition to and apart from any compensation for legal services performed. A retainer must be agreed to in a writing signed by the client. Unless otherwise agreed, a retainer is the lawyer's property on receipt and shall not be placed in the lawyer's trust account. <A]

[A> (2) A lawyer may charge a flat fee for specified legal services, which constitutes complete payment for those services and is paid in whole or in part in advance of the lawyer providing the services. If agreed to in advance in a writing signed by the client, a flat fee is the lawyer's property on receipt, in which case the fee shall not be deposited into a trust account under Rule 1.15A. The written fee agreement shall, in a manner that can easily be understood by the client, include the following: (i) the scope of the services to be provided; (ii) the total amount of the fee and the terms of payment; (iii) that the fee is the lawyer's property immediately on receipt and will not be placed into a trust account; (iv) that the fee agreement does not alter the client's right to terminate the client-lawyer relationship; and (v) that the client may be entitled to a refund of a portion of the fee if the agreed-upon legal services have not been completed. A statement in substantially the following form satisfies this requirement: <A]

[A> [Lawyer/law firm] agrees to provide, for a flat fee of $    , the following services:    . The flat fee shall be paid as follows:    . Upon [lawyer's/law firm's] receipt of all or any portion of the flat fee, the

funds are the property of [lawyer/law firm] and will not be placed in a trust account. The fact that you have paid your fee in advance does not affect your right to terminate the client-lawyer relationship. In the event our relationship is terminated before the agreed-upon legal services have been completed, you may or may not have a right to a refund of a portion of the fee. <A]

[A> (3) In the event of a dispute relating to a fee under paragraph (f)(1) or (f)(2) of this Rule. The lawyer shall take reasonable and prompt action to resolve the dispute. <A]

Comment

[1] - [9] [Unchanged.]

Additional Washington Comments (10-1[D> 1 <D][A> 8 <A])

Reasonableness of Fee and Expenses

[10] Every fee agreed to, charged, or collected, including a fee [D> denominated as "nonrefundable or "earned upon receipt" <D] [A> that is a lawyer's property on receipt under paragraph (f)(1) or (f)(2) <A], is subject to Rule 1.5(a) and may not be unreasonable.

[11] Under paragraph (a)(9), one factor in determining whether a fee is reasonable is whether the fee agreement or confirming writing demonstrates that the client received a reasonable and fair disclosure of material elements of the fee agreement. Lawyers are encouraged to use written fee agreements that fully and fairly disclose all material terms in a manner easily understood by the client.

[A> Payment of Fees in Advance of Services <A]

[A> [12] In the absence of a written agreement between the lawyer and the client to the contrary that complies with paragraph (f)(1) or (f)(2), all advance payments are presumed to be deposits against future services or costs and must, until the fee is earned or the cost incurred, be held in a trust account pursuant to Rule 1.15A. See Rule 1.15A(c)(2). This fee structure is known as an "advance fee deposit." Such a fee may only be withdrawn when earned. See Rule 1.15A(h)(3). For example, when an advance fee deposit is placed in trust, a lawyer may withdraw amounts based on the actual hours worked. In the case of a flat fee that constitutes an advance fee deposit because it does not meet the requirements of paragraph (f)(2), the lawyer and client may mutually agree, preferably in writing, on a reasonable basis for determining when portions of the fee have been earned, such as specific "milestones" reached during the representation or specified time intervals that reasonably reflect the actual performance of the legal services. <A]

[A> [13] Paragraphs (f)(1) and (f)(2) provide exceptions to the general rule that fees received in advance must be placed in trust. Paragraph (f)(1) describes a fee structure sometimes known as an "availability retainer," "engagement retainer," "true retainer," "general retainer," or "classic retainer." Under these rules, this arrangement is called a "retainer." A retainer secures availability alone, i.e., it presumes that the lawyer is to be additionally compensated for any actual work performed. Therefore, a payment purportedly made to secure a lawyer's availability, but that will be applied to the client's account as the lawyer renders services, is not a retainer under paragraph (f)(1). A written retainer agreement should clearly specify the time period or purpose of the lawyer's availability, that the client will be separately charged for any services provided, and that the lawyer will treat the payment as the lawyer's property immediately on receipt and will not deposit the fee into a trust account. <A]

[A> [14] Paragraph (f)(2) describes a "flat fee," sometimes also known as a "fixed fee." A flat fee constitutes complete payment for specified legal services, and does not vary with the amount of time or effort expended by the lawyer to perform or complete the specified services. If the requirements of paragraph (f)(2) are not met, a flat fee received in advance must be deposited initially in the lawyer's trust account. See Washington Comment [12]. <A]

[A> [15] If a lawyer and a client agree to a retainer under paragraph (f)(1) or a flat fee under paragraph (f)(2) and the lawyer complies with the applicable requirements, including obtaining agreement in a writing signed by the client, the fee is considered the lawyer's property on receipt and must not be deposited into a trust account containing client or third-party funds. See Rule 1.15A(c) (lawyer must hold property of clients separate from lawyer's own property). For definitions of the terms "writing" and "signed," see Rule 1.0(n). <A]

[A> [16] In fee arrangements involving more than one type of fee, the requirements of paragraphs (f)(1) and (f)(2) apply only to the parts of the arrangement that are retainers or flat fees. For example, a client might agree to make an

advance payment to a lawyer, a portion of which is a flat fee for specified legal services with the remainder to be applied on an hourly basis as services are rendered. The latter portion is an advance fee deposit that must be placed in trust under Rule 1.15A(c)(2). If the requirements of paragraph (f)(2) are met regarding the flat fee portion, those funds are the lawyer's property on receipt and must not be kept in a trust account. If the payment is in one check or negotiable instrument, it must be deposited intact in the trust account, and the flat fee portion belonging to the lawyer must be withdrawn at the earliest reasonable time. See Rule 1.15A(h)(1)(ii) & (h)(4). See also Comment [10] to Rule 1.15A (explaining prohibition on split deposits). Although a signed writing is required under paragraphs (f)(1) and (f)(2) only for the retainer or flat fee portion of the fee (and only if the lawyer and client agree that the fee will be the lawyer's property on receipt), the lawyer should consider putting the entire arrangement in writing to facilitate communication with the client and prevent future misunderstanding. See Washington Comment [11]. <A]

SUGGESTED AMENDMENT

RULES OF PROFESSIONAL CONDUCT (RPC)

RULE 1.15A SAFEGUARDING PROPERTY

(a) -- (b) [Unchanged.]

(c) A lawyer must hold property of clients and third persons separate from the lawyer's own property.

(1) A lawyer must deposit and hold in a trust account funds subject to this Rule pursuant to paragraph (h) of this Rule.

(2) [A> Except as provided in Rule 1.5(f), and subject to the requirements of paragraph (h) of this Rule, a lawyer shall deposit into a trust account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred. <A]

[A> (3) <A] A lawyer must identify, label and appropriately safeguard any property of clients or third persons other than funds. The lawyer must keep records of such property that identify the property, the client or third person, the date of receipt and the location of safekeeping. The lawyer must preserve the records for seven years after return of the property.

(d) -- (j) [Unchanged.]

Washington Comments

[1] [Unchanged.]

[2] Client funds include, but are not limited to, the following: legal fees and costs that have been paid in advance [A> (other than retainers and flat fees complying with the requirements of Rule 1.5(f)) <A], funds received on behalf of a client, funds to be paid by a client to a third party through the lawyer, other funds subject to attorney and other liens, and payments received in excess of amounts billed for fees.

[3] -- [7] [Unchanged.]

[8] If a lawyer accepts payment of an advanced fee deposit by credit card, the payment must be deposited directly into the trust account. It cannot be deposited into a general account and then transferred to the trust account. Similarly, credit card payments of earned fees[A> , of retainers meeting the requirements of Rule 1.5(f)(1), and of flat fees meeting the requirements of Rule 1.5(f)(2) <A] cannot be deposited into the trust account and then transferred to another account.

[9] -- [15] [Unchanged.]

THE SUPREME COURT OF WASHINGTON

IN THE MATTER OF THE ADOPTION OF THE AMENDMENT TO APR 11.2(A)(6)-EDUCATION REQUIREMENT-MINIMUM REQUIREMENT AND APR 11 REGULATION 102

ORDER

NO. 25700-A-903

The Court previously adopted, with revisions, the Washington State Bar Association's recommended amendments to APR 11.2(a)(6)-Education Requirement-Minimum Requirement and APR 11 Regulation 102 on June 6, 2008.

The Court was, thereafter, asked to reconsider the revisions to APR 11.2(a)(6)-Education Requirement-Minimum Requirement and APR 11 Regulation 102 and has reconsidered and determined that APR 11.2(a)(6)-Education Requirement-Minimum Requirement and APR 11 Regulation 102 as originally submitted by the Washington State Bar Association will aid in the prompt and orderly administration of justice and further determined that an emergency exists which necessitates an early adoption;

Now, therefore, it is hereby

ORDERED:

(a) That the amendments as attached hereto are adopted.

(b) That pursuant to the emergency provisions of GR 9(j)(1), the amendments will be published expeditiously and become effective January 1, 2009.

DATED at Olympia, Washington this 28th day of October, 2008.

RULE 11.2

EDUCATIONAL REQUIREMENT

(a) Minimum Requirement. Each active member of the Bar Association, and other lawyers who are required by the APRs to complete continuing legal education credits, must complete a minimum of 45 credit hours of accredited legal education (as provided in APR 11.4) by December 31 of the last year of the lawyer's three-year reporting period as assigned by the Bar Association. Specific requirements are the following, and are described in Appendix APR 11 -- Regulations of the Washington State Board of Mandatory Continuing Legal Education

(1) A lawyer may earn all of the required credit hours, and must earn at least half of the required credits, as live credits, as described in Regulation 103(b) of Appendix APR 11.

(2) A lawyer must earn a minimum of six of the required 45 credit hours of accredited legal education in the area of ethics, as that is defined in Regulation 101(g) of Appendix APR 11.

(3) A lawyer may earn a maximum of one-half of the required credit hours for any reporting period through self-study, as defined in Regulation 103(h) of Appendix APR 11.

(4) A lawyer may earn a maximum of six credit hours annually through pro bono training and service carried out strictly in compliance with Regulation 103(f) of Appendix APR 11.

(5) A lawyer may earn a maximum of six of the required credit hours for any reporting period for participation in law school competitions, moot court, or mock trials programs, as described in Regulation 103(g) of Appendix APR 11.

[D> (6) A lawyer may earn a maximum of one half of the required credit hours for any reporting period through courses sponsored by private law firms, corporate law departments and government agencies. <D]

(b) New Admission. Newly admitted members must complete 45 continuing legal education credits during the four full calendar years after the member's date of admission. Following the new admission period, the member shall complete 45 credits every three years as required by APR 11.2(a).

(c) Carryover of excess earned credits. If a member completes more than the required credits for any one reporting period, up to 15 of the excess credits may be carried forward and applied to that member's education requirement for the

next reporting period. Of the 15 credit hours that may be carried forward to the next reporting period, pursuant to sections (a) and (b) of this rule:

(1) A maximum of two credit hours may be applied toward the ethics requirement; and

(2) A maximum of five credit hours may be applied to self-study credits.

[D> Regulation 102. Continuing Legal Education Requirement <D]

[D> (a) As provided for in APR 11.2, each active member shall complete a minimum of 45 credit hours of approved legal education every three years. At least six of the 45 continuing legal education credit hours required during the reporting period shall be devoted exclusively to the areas of legal ethics, professionalism, or professional responsibility. If an active member completes more than 45 credits during a three year reporting period, 15 of the excess credits may be carried forward and applied to that member's education requirement for the next reporting period. The fifteen credit hours that may be carried forward may include two credit hours toward the legal ethics, professionalism, or professional responsibility requirement. <D]

[D> (b) Ethics/Professionalism Requirement. As provided for in APR 11.2(c) <D]

[D> (c) All active members shall complete and report a minimum of six credit hours of approved or accredited legal ethics, professionalism, or professional responsibility continuing education for the reporting period terminating on December 31, 1998 and for each reporting period thereafter. <D]

[D> [Regulation 102 adopted effective July 26, 1905; amended effective May 2, 2000.] <D]

[A> Regulation 102. Standards for Approval and Accreditation. To be approved for credit, all courses must meet all of the following criteria, except where otherwise stated. <A]

[A> (a) A course must have significant intellectual or practical content relating to the practice of law or legal ethics. In determining whether courses have such content, the following factors should be considered: <A]

[A> (1) The topic, depth, and skill level of the material; <A]
[A> (2) The level of practical or academic experience or expertise of the presenters or faculty; <A]
[A> (3) The intended audience, which may include others besides lawyers; <A]
[A> (4) The written materials, which must be of high quality, in a hardcopy or electronic format, and distributed to all attendees at or before the course is presented. In some unusual cases, written materials may not be necessary, but that is the exception and not the rule; and, <A]
[A> (5) The physical setting, which must be suitable to the educational activity and free from unscheduled interruption. <A]

[A> (b) Any written, electronic, or presentation materials must be available for submission and review upon request by the MCLE Board. However, in the case of government-sponsored, closed seminars, where materials are subject by law to confidentiality rules or regulations, those portions of the materials subject to confidentiality may be redacted from the overall submission, provided that a list of the redacted materials, a general summary of the redacted materials, and the basis for confidentiality, is supplied. <A]

[A> (c) The course must be open to audit by the MCLE Board or its designees at no charge. However, this requirement may be waived in cases of government-sponsored, closed seminars if the reason stated on the Form 1, as required by Reg 104(a)(3), is approved by the MCLE Board. <A]

[A> (d) The sponsor must keep accurate attendance records and retain them for six years. The sponsor must provide copies to the MCLE Board upon request. In addition, the sponsor must report attendance within 30 days of the end of the program as required by APR 11.6(a)(1). <A]

[A> (e) The attendees must be provided with a critique form or evaluation sheet to complete. The completed forms, or a compilation of all numerical ratings and comments, must be retained by the sponsor for two years and copies must be provided to the MCLE Board upon request. <A]

[A> (f) There must be no marketing of any law firm or any company that provides goods or services to lawyers or law firms during the presentation of the program in the room where the program is being held. <A]

[A> (g) Aside from indicating that an activity has been accredited for the number and type of credits approved by the MCLE Board, people and organizations must not state or imply that the WSBA or the MOLE Board approves or endorses any person, law firm, or company providing goods or services to lawyers or law firms. <A]

[A> (h) A course must not focus directly on a pending case, action or matter currently being handled by the sponsor if the sponsor is a private law firm, corporate legal department, or a government agency. <A]

[A> (i) If the course is sponsored by a private law firm, no client, former client, or prospective client of the private law firm may directly or indirectly pay for or underwrite the course, in whole or in part. <A]

**HISTORY:**

Order issued October 28, 2008.

# APPENDIX B

# CHAPTER 3

## ATTORNEY FEES

Michael R. Caryl

**ALERT: AS THIS SUPPLEMENT GOES TO PRESS, THE WASHINGTON SUPREME COURT IS CONSIDERING AMENDMENTS TO RPC 1.5 AND 1.15A, RELATING TO THE HANDLING OF VARIOUS TYPES OF ADVANCE FEE ARRANGEMENTS, PROPOSED BY THE WSBA TRUST ACCOUNT RESPONSIBILITIES AND RETAINERS TASK FORCE (TARRTF).**

**THE PROPOSED AMENDMENTS AND OTHER EXPLANATORY MATERIAL MAY BE FOUND ON THE WSBA WEBSITE AT** *http://www.wsba.org/lawyers/groups/trustaccounttaskforce/default1.htm*

*In addition to normal supplement material, new subsections (i)-(iv) have been added to §3.4(5)(c), a new §3.5 has been added, and former §3.5 has been renumbered as §3.6.*

---

Michael R. Caryl is a 1969 graduate (*cum laude*) of St. Lawrence University, and received his J.D from Georgetown University Law Center. He is a 1977 graduate of George Washington School of Law (LL.M with Highest Honors.) He served four years active duty in the U.S. Army as a Judge Advocate, during which time he tried several hundred courts-martial and later handled several hundred appeals before the Army Court of Military Review and the U.S. Court of Military Appeals in Washington, D.C. Mr. Caryl has conducted a trial practice in Seattle since 1977, focusing on personal injury, contraction and insurance litigation. He has served on the Board of the Washington State Trial Lawyers Association (WSTLA) and was Chair of the WSTLA CR 35 Task Force. His current practice is limited to attorney fee disputes between lawyers and clients and lawyers and lawyers, and he frequently writes, presents, and serves as an expert witness on these topics. In addition to expert witness work, Mr. Caryl also serves as a paid arbitrator and mediator in fee dispute cases. His website dedicated to attorney's fees and ethics issues is www.michaelcaryl.com.

*Vanderbeek,* 153 Wn.2d 64, 101 P.3d 88 (2004), clarified that the statement in *Boelter* focusing on former RPC 1.5(a)(8) (now RPC 1.5(a)(9)) as "the relevant factor in the determination of reasonableness" applies "in instances where an attorney has charged clients' fees that were alleged to be outside of those agreed upon by the parties in their fee agreement." *Vanderbeek,* 153 Wn.2d at 85 n.18. There is some disagreement among commentators about the extent to which a lawyer may charge clients for overhead items if fully disclosed in the fee agreement. Nonetheless, all fees charged must be reasonable, and charges not fully disclosed to the client will not likely be determined to be reasonable.

> **Query:**    May a lawyer charging a high hourly rate, in addition, charge for common overhead such as secretarial work?

### (b)   Examples of unreasonable fees

*Insert after second paragraph:*

See also *In re Disciplinary Proceeding Against Vanderbeek,* 153 Wn.2d 64, 101 P.3d 88 (2004), in which the court determined that the following were unreasonable billing practices:

- charging for services that were not performed;

- inflating the amount of time that was spent on a service;

- billing a client at attorney rates for legal assistant work;

- billing for overhead and secretarial work;

- charging clients for the time spent collecting fees from them;

- refusing to provide clients with itemized bills;

- failing to keep back-up documentation of bills in order to properly respond to requests for information.

In *Vanderbeek,* the attorney was disbarred for this pattern of improper billing conduct. *See also In re Disciplinary Proceeding Against Burtch,* 162 Wn.2d 873, 886, 175 P.3d 1070 (2008) (violation of RPC 1.5(a) when lawyer "failed to adequately and accurately explain the fee agreement to his client" and failed to return unearned fees); *In re Disciplinary Proceeding Against Marshall,* 160 Wn.2d 317, 334-36, 157 P.3d 859 (2007) (violation of RPC 1.5(a) when lawyer charged contract attorney fees as costs without informing client, and charged excessive costs); *In re Disciplinary Proceeding Against DeRuiz,* 152 Wn.2d 558, 574-75, 577, 99 P.3d 881 (2004) (when a lawyer fails to perform

§3.3(2)(b) / Attorney Fees

contracted services, his failure to return unearned fees violates RPCs 1.5 and 1.15(d) (now RPC 1.16(d)); *In re Disciplinary Proceeding Against Egger,* 152 Wn.2d 393, 405-08, 98 P.3d 477 (2004) (fee was unreasonable when the lawyer was "paid twice for the same work"). In *Egger,* the court reiterated that "a client's acquiescence to an unreasonable fee does not absolve misconduct." *Egger,* 152 Wn.2d at 407.

"A fee agreement must comply with both RPC 1.5 and RPC 1.8(a) when part of the fee consists of a business transaction or interest in the client's business." *In re Disciplinary Proceeding Against Haley,* 157 Wn.2d 398, 414-15, 138 P.3d 1044 (2006); *see also Holmes v. Loveless,* 122 Wn. App. 470, 475-77, 94 P.3d 338 (2004) ("the excessive fee and business transaction provisions overlap when attorneys and clients use business transactions as compensation for legal services"); *Valley / 50th Ave., L.L.C. v. Stewart,* 159 Wn.2d 736, 744, 153 P.3d 186 (2007) (RPC 1.8(a) does not apply to "a standard fee agreement involv[ing] *anticipated* legal fees and an agreement to pay them," when the relationship is "merely attorney-client" rather than "debtor-creditor"). The RPC 1.8(a) issues relating to such fees are discussed at §11.3(2)(a) of this deskbook.

## (2)   Fees specifically prohibited

### (a)   Certain contingent fees

*Add at end of subsection:*

See RPC 1.5 cmt. [6]: RPC 1.5(d) "does not preclude a contract for a contingent fee for legal representation in connection with the recovery of post-judgment balances due under support, maintenance or other financial orders because such contracts do not implicate the same policy concerns."

### (b)   Fee sharing

*Add at end of subsection:*

The 2006 amendments to the Rules of Professional Conduct modified the language of RPC 1.5(e) as it relates to the division of attorney fees by lawyers not in the same firm. The 2006 rule essentially provides that such a division is permitted if (1) either fees are divided "in proportion to the services provided by each lawyer," or "each lawyer assumes joint responsibility for the representation" (largely for purposes of malpractice responsibility); (2) the total fee is reasonable; and (3) the client agrees *in writing* to the arrangement, "including the share each lawyer will receive." *See* RPC 1.5 cmts. [7], [8]. If the lawyers

**Attorney Fees §3.3(3)**

divide the fee in proportion to the services provided by each, there is no requirement of precise proportionality. *See McNeary v. Am. Cyanamid Co.,* 105 Wn.2d 136, 142, 712 P.2d 845 (1986) ("On the other hand, CPR DR 2-107 [the Code version of the fee-splitting rule] should not mean that attorneys must 'correlate each minute spent on a case to each penny earned therefrom in order to achieve proportionality between "the responsibility assumed and services performed" on the one hand and each attorney's share of the fee on the other.'").

The prior rule was by and large the same with the exception that the written agreement with the client providing for fee sharing by the lawyers was not expressly required to contain the specification of "the share each lawyer will receive," although this requirement was likely implicit in the old rule as well.

Two cases in which the effect of this rule was litigated are *Hoglund v. Meeks,* 139 Wn. App. 854, 170 P.3d 37 (2007), and *Mazon v. Krafchick,* 158 Wn.2d 440, 144 P.3d 1168 (2006). See also Wash. Rules of Prof'l Conduct Comm., Informal Op. 2127 (2006), and Wash. Rules of Prof'l Conduct Comm., Informal Op. 2159 (2007), which address the rule in the contract lawyer context.

### (d)   Alternatives to money

*Insert after first sentence of first paragraph:*

See RPC 1.5 cmt. 4:

> A lawyer may accept property in payment for services, such as an ownership interest in an enterprise, providing this does not involve acquisition of a proprietary interest in the cause of action or subject matter of the litigation contrary to Rule 1.8(i). However, a fee paid in property instead of money may be subject to the requirements of Rule 1.8(a) because such fees often have the essential qualities of a business transaction with the client.

### (3)   The fee agreement

*Replace the word "eight" in first sentence of existing paragraph with the following:*

nine

*Replace citation at end of first sentence of existing paragraph with the following:*

RPC 1.5(a)(1) & (9).

**§3.3(3)(a)(ii) / Attorney Fees**

*Replace citation at end of second sentence of existing paragraph with the following:*

RPC 1.5(a)(1)-(9).

### (a)   Requirement of a writing

#### (i)   Requirement absolute

*Replace citation to RPC 1.5(a)(8) at end of existing paragraph with the following:*

RPC 1.5(a)(9)

*Add at end of existing paragraph:*

Note that the language of RPC 1.5(c) as amended in 2006 (quoted below) is slightly different, but the intent is still the same — it must be in writing absolutely. *See* RPC 1.5(c) for the specific requirements of a contingent fee agreement.

#### (ii)   Strongly recommended

*Replace citation to RPC 1.5(a)(8) at end of first sentence of existing paragraph with the following:*

RPC 1.5(a)(9)

*Add at end of subsection:*

Again, the language of RPC 1.5 was changed in 2006. The new rule must be studied by practitioners.

| *Comment:* | It is critical for lawyers to have written fee agreements that are clear and unambiguous. Closer scrutiny by courts and more client-oriented end results may be expected in the future unless lawyers' documentation of billing practices and arrangements improves greatly. *See* RPC 1.5 cmt. [2] ("it is desirable to furnish the client with at least a simple memorandum"; "[a] written statement concerning the terms of the engagement reduces the possibility of misunderstanding"); RPC 1.5 Wash. cmt. [11] ("Lawyers are encouraged to use written fee agreements that fully and fairly disclose all material terms in a manner easily understood by the client.") |
|---|---|

**(b)   Terms to include**

### (ii)   Court-ordered/approved fees

*Add at end of first paragraph:*

For instance, RCW 4.24.005 is a statute that authorizes claimants to seek a court determination of the reasonableness of attorney fees charged in a *tort* action. Note that the statute provides that the court is to consider, in arriving at a reasonableness determination, "whether the client was aware of his or her right to petition the court under this section."

*Add at end of subsection:*

The *Luna* case makes clear that poor drafting or failure to address how court awarded fees are to be handled can result in defeated expectations for the lawyer. It is again essential for the lawyer to address this issue straight on — i.e., who owns the fee award. Lawyers can handle fee entitlements in these cases in different ways. Fee agreements may provide that the lawyer takes the award in lieu of a contingency fee, or the fee award is added to the principal recovery and the lawyer's contingency percentage attaches to the gross recovery including the court-awarded fees. Some agreements leave the option to the lawyer or provide that the lawyer may elect one or the other. Of course, all such fee agreements are subject to the provision of RPC 1.5(a) that all fees must be reasonable.

### (iii)  Nonrefundability

*Add at end of subsection:*

As discussed in §3.2(1), proposed amendments to RPC 1.5 and RPC 1.15A, which have been approved by the WSBA Board of Governors and are under consideration by the Washington Supreme Court, would substantially change the treatment of advance fees and would prohibit certain terminology, including a description of fees as "nonrefundable." *See http://www.wsba.org/lawyers/groups/ trustaccounttaskforce/default1.htm.*

### (iv)  Costs

*Add at end of subsection:*

Costs can become an area of abuse in the attorney-client relationship. The word "costs" has an implication for the typical client of something that is being passed on at cost to the lawyer. Some lawyers

**§3.3(5)(a) / Attorney Fees**

will pass along to clients what is truly part of the lawyer's overhead, such as the use of facsimile equipment, photocopies at a rate well in excess of the actual cost, the lawyer's computer research subscription prorated over the entire clientele, and ordinary overhead like an outside typing service. Some lawyers use a monthly overhead charge to cover things like filing, etc. When the lawyer's hourly rate is competitive with others, given his or her own experience and expertise, passing these charges on to clients is questionable. True costs at the lawyer's actual cost may be passed through. The lawyer may not, however, profit from costs. *See* RPC 1.5 cmt. [1] ("A lawyer may seek reimbursement for the cost of services performed in-house, such as copying, or for other expenses incurred in-house, such as telephone charges, either by charging a reasonable amount to which the client has agreed in advance or by charging an amount that reasonably reflects the cost incurred by the lawyer."); ABA Comm. on Prof'l Ethics and Grievances, Formal Op. 379 (1993).

### (v)   Billing

*Replace citation to RPC 1.15(a)(3) following third sentence of existing paragraph with the following:*

RPC 1.5(e)(1)(ii)

### (4)   Relationship of fee rule to trust account rule

*Replace citation to RPC 1.14 at end of first sentence of existing paragraph with the following:*

RPC 1.15B.

*Replace citation to RPC 1.14 in second sentence of existing paragraph with the following:*

RPC 1.15A

### (5)   Fees in particular types of cases

### (a)   Contingent fees

*Replace blockquoted text of rule in fourth paragraph with the following:*

> (c) A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (d) or other law. If a fee is contingent on the outcome of a matter, a lawyer shall comply with the following

**Attorney Fees §3.3(5)(a)**

(1) A contingent fee agreement shall be in a writing signed by the client;

(2) A contingent fee agreement shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal; litigation and other expenses to be deducted from the recovery; and whether such expenses are to be deducted before or after the contingent fee is calculated. The agreement must clearly notify the client of any expenses for which the client will be liable, whether or not the client is the prevailing party;

(3) Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination; and

(4) A contingent fee consisting of a percentage of the monetary amount recovered for a claimant, in which all or part of the recovery is to be paid in the future, shall be paid only

(i) by applying the percentage to the amounts recovered as they are received by the client; or

(ii) by applying the percentage to the actual cost of the settlement or award to the defendant.

(d) A lawyer shall not enter into an arrangement for, charge, or collect:

(1) any fee in a domestic relations matter, the payment or amount of which is contingent upon the securing of a dissolution or annulment of marriage or upon the amount of maintenance or support, or property settlement in lieu thereof; or

(2) a contingent fee for representing a defendant in a criminal case.

# APPENDIX C

Westlaw.

C Restatement (Third) of The Law Governing Lawyers
Current through April 2009

Copyright © 2000-2009 by the American Law Institute

Chapter 3. Client And Lawyer: The Financial And Property Relationship
Topic 3. Fee-Collection Procedures

§ 42. Remedies And The Burden Of Persuasion

**(1) A fee dispute between a lawyer and a client may be adjudicated in any appropriate proceeding, including a suit by the lawyer to recover an unpaid fee, a suit for a refund by a client, an arbitration to which both parties consent unless applicable law renders the lawyer's consent unnecessary, or in the court's discretion a proceeding ancillary to a pending suit in which the lawyer performed the services in question.**

**(2) In any such proceeding the lawyer has the burden of persuading the trier of fact, when relevant, of the existence and terms of any fee contract, the making of any disclosures to the client required to render a contract enforceable, and the extent and value of the lawyer's services.**

Comment:

*a. Scope and cross-references.* This Section recognizes several remedies appropriate to client-lawyer fee disputes and states certain burdens of persuasion that lawyers must meet. The rules relevant in such adjudications include not only those in this Chapter but also others in this Restatement and in the law of contracts, procedure, and other subjects. Thus, §§ 34-41 and 43 apply, regardless of the forum in which the fee is adjudicated.

The Section deals only with fee disputes between clients and lawyers. Comparable issues can arise in disciplinary or criminal proceedings against lawyers. This Section takes no position as to the burden of persuasion applicable in those contexts. On discipline, see § 5.

*b(i). Fee-determination proceedings—in general.* This Section mentions the most typical proceedings in which fee disputes are resolved, but the parties might resort to other remedies provided by law. A lawyer's choice of remedy should not violate duties owed to a client. For example, a lawyer should not ask a court to exercise its ancillary jurisdiction to resolve a fee dispute when another forum is reasonably available and the ancillary proceeding would involve disclosure of confidential information which would harm the client in the principal suit (see §§ 41 & 65).

*b(ii). Fee-determination proceedings—suit by a lawyer.* Since the early 19th century, courts in the United States have recognized actions brought by lawyers to recover fees. Procedurally, such actions have been treated as contract suits, whether in quantum meruit or based on an explicit contract. Usually each party is entitled to trial by jury.

*b(iii). Fee-determination proceedings—suit by a client.* A client may sue a lawyer to recover excessive fees paid (see Restatement Second, Agency § 404A). In light of the power of the court to prevent overreaching by lawyers and under principles of restitution, a client's payment of a fee does not always preclude a later suit for a refund (see § 33(1) hereto and Restatement of Restitution §§ 18-21). However, when the client was informed of the facts needed to evaluate the fee's appropriateness and made payment upon completion of the lawyer's services, payment of a fee

can constitute a contract enforceable by the lawyer under § 18, especially if the client was sophisticated in such matters.

*b(iv). Fee-determination proceedings—alternative dispute resolution.* In many jurisdictions, fee-arbitration procedures entitle any client to obtain arbitration; in others, both lawyer and client must consent. The procedures vary in the extent to which arbitration results are binding on one or both parties. Lawyers and clients might agree to arbitration under general arbitration statutes. An agreement to arbitrate should meet standards of fairness, particularly as regards designation of arbitrators. A client and lawyer may also resort to other forms of nonjudicial dispute resolution.

*b(v). Fee-determination proceedings—ancillary jurisdiction.* A court in which a case is pending may, in its discretion, resolve disputes between a lawyer and client concerning fees for services in that case. Such a determination ordinarily occurs at the end of the case if the client objects to the lawyer's bill or the lawyer claims a lien on the recovery (see § 43). It can occur during the case, as when a lawyer who has been replaced claims payment.

Ancillary jurisdiction derives historically from the authority of the courts to regulate lawyers who appear before them (see § 1, Comment *c*). The court might already be familiar with facts relating to the lawyer's services. Sometimes the court might itself raise a question concerning the size of a fee. Courts also assess the propriety of fees when the client is a minor or a class-action member or is otherwise unable to protect the client's own interest.

A court may decline to exercise jurisdiction to avoid interfering with the main case, for example when it will delay resolution of the client's claims on the merits or require going beyond consideration of the lawyer's services in the case before the court. A court may grant severance to prevent interference with the original case.

*c. A lawyer's burden of persuasion.* Whatever the forum or procedure, the lawyer must persuade the trier of fact of the existence and provisions of any fee contract, the making of required disclosures to the client, and the extent and value of the lawyer's services, when such matters are relevant and in dispute. The client does not lose the benefit of that allocation when the client is plaintiff, for example when the client sues for a refund or has agreed to arbitration. The customary rules of allocation apply to such matters of defense as the statute of limitations.

This Section deals only with the burden of persuasion—that is, how the case should be decided if the evidence is equally balanced. It does not regulate the burden of pleading; ordinarily the party who initiates a proceeding must set forth allegations showing it is entitled to relief. Nor does this Section regulate the burden of coming forward, that is, the rules stating what evidence a party must submit to avoid a directed verdict against it. However, the policies expressed in this Section might be relevant to allocating that burden.

This Section's allocation of the burden of persuasion applies whether the client or the lawyer initiates the proceeding. Any other rule would be an incentive to maneuver in which lawyers' knowledge and skills would often give them an unfair advantage. A lawyer, moreover, will usually have better access than a client to evidence about the lawyer's own services, the lawyer's terms of employment, and customary practices concerning fee arrangements.

Illustration:

1. Client and Lawyer agree that Lawyer will represent Client for a fee of $100 per hour and that Client will make a deposit of $5,000. When the representation has been concluded, the parties dispute what fee is due. Client sues to recover $2,000, alleging and introducing evidence tending to show that Lawyer devoted no more than 30 hours to the matter. Lawyer denies this and testifies to devoting 50 hours. If the conflicting evidence leaves the trier of fact in equipoise, it should find for Client.

REPORTER'S NOTE

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

*Comment b. Fee-determination proceedings (i-v).* On the evolution of fee suits by lawyers, see Leubsdorf, Toward a History of the American Rule on Attorney Fee Recovery, 47 L. & Contemp. Probs. 9, 16 (1984). On fee-recovery suits by clients, see Sears Roebuck & Co. v. Goldstone & Sudalter, P.C., 128 F.3d 10 (1st Cir.1997); Federal Savings & Loan Ins. Corp. v. Angell, Holmes & Lea, 838 F.2d 395 (9th Cir.1988); Newman v. Silver, 713 F.2d 14 (2d Cir.1983); Guenard v. Burke, 443 N.E.2d 892 (Mass.1982); American Nat'l Bank v. Clarke & Van Wagner, Inc., 692 P.2d 61 (Okla.Ct.App.1984); ABA Model Rules of Professional Conduct, Rule 1.16(d) (1983) (when representation ends, lawyer must refund "any advance payment of fee that has not been earned"); ABA Model Code of Professional Responsibility, DR 2-110(A)(3) (1969) (similar); § 38, Comment *g,* and Reporter's Note thereto; cf. 3 G. Palmer, The Law of Restitution §§ 14.5 & 14.8 (1978) (restitution of mistaken overpayment in other situations). For trial by jury in fee suits, see Simler v. Conner, 372 U.S. 221, 83 S.Ct. 609, 9 L.Ed.2d 691 (1963) (lawyer suit); Cameron v. Sullivan, 360 N.E.2d 890 (Mass.1977) (client suit); 2 E. Thornton, A Treatise on Attorneys at Law 960-61 (1914). But see In re LiVolsi, 428 A.2d 1268 (N.J.1981) (equity jurisdiction to enjoin fee suit); § 43, Comment *g,* and Reporter's Note thereto (no jury in lien case).

On fee-arbitration procedure, see ABA Model Rules for Fee Arbitration (1995); Rau, Resolving Disputes Over Attorneys' Fees: The Role of ADR, 46 SMU L. Rev. 2005 (1993). For the requirement that the client give informed consent to arbitration, see, e.g., Marino v. Tagaris, 480 N.E.2d 286 (Mass.1985); Nisbet v. Faunce, 432 A.2d 779 (Me.1981); N.J. Rules of General Application, Rule 1:20A-3(a); cf. Alternative Sys. Inc. v. Carey, 79 Cal.Rptr.2d 567 (Cal.Ct.App.1998) (contractual arbitration clause invalid as interfering with client's right to bar-association fee arbitration).

On ancillary jurisdiction, see, e.g., Kalyawongsa v. Moffett, 105 F.3d 283 (6th Cir.1997); Rosquist v. Soo Line R.R., 692 F.2d 1107 (7th Cir.1982); Ohliger v. Carondelet St. Mary's Hospital, 845 P.2d 523 (Ariz.Ct.App.1992); Gagnon v. Shoblom, 565 N.E.2d 775 (Mass.1991) (dictum); Greenwald v. Scheinman, 463 N.Y.S.2d 303 (N.Y.App.Div.1983); Weatherly v. Longoria, 292 S.W.2d 139 (Tex.Civ.App.1956). For the court's power to exercise jurisdiction without the client's request, see Coffelt v. Shell, 577 F.2d 30 (8th Cir.1978); Hoffert v. General Motors Corp., 656 F.2d 161 (5th Cir.1981) (protection of minor); Dunn v. H.K. Porter Co., 602 F.2d 1105 (3d Cir.1979) (protection of class members); see also, e.g., Zucker v. Occidental Petroleum Corp., 192 F.3d 1323 (9th Cir.1999), cert. denied,        U.S.        , 120 S.Ct.1671, 146 L.Ed.2d 481 (2000) (even if no member of class has standing, court has ancillary jurisdiction to entertain challenge to fee of class counsel). For situations in which a court lacks or will not exercise ancillary jurisdiction, see Moore v. Telfon Communications Corp., 589 F.2d 959 (9th Cir.1978) (delay for opposing party); Jenkins v. Weinshienk, 670 F.2d 915 (10th Cir.1982) (fees in other proceedings); Taylor v. Kelsey, 666 F.2d 53 (4th Cir.1981) (quarrel between lawyers). Compare United States v. Vague, 697 F.2d 805 (7th Cir.1983) (no ancillary jurisdiction in criminal case), with United States v. Strawser, 800 F.2d 704 (7th Cir.), cert. denied, 480 U.S. 906, 107 S.Ct. 1350, 94 L.Ed.2d 521 (1987) (jurisdiction proper when it might avoid need to appoint government-paid counsel); see Annot., 92 A.L.R. Fed. 864 (1987).

*Comment c. A lawyer's burden of persuasion.* As to the lawyer's burden of showing the existence and terms of a fee contract, see Kirby v. Liska, 334 N.W.2d 179 (Neb.1983) (oral contingent-fee contract); Becnel v. Montz, 384 So.2d 1015 (La.Ct.App.1980) (oral contract); Vernon, Vernon, Wooten, Brown & Andrews, P.A. v. Miller, 326 S.E.2d 316 (N.C.Ct.App.1985). As to required disclosure, see Jacobson v. Sassower, 489 N.E.2d 1283 (N.Y.1985); Jenkins v. District Court, 676 P.2d 1201 (Colo.1984). There is much authority holding that a lawyer has the burden of showing the reasonableness of a fee contract made during the representation (see § 18). E.g., Terzis v. Estate of Whalen, 489 A.2d 608 (N.H.1985); Mercy Hospital, Inc. v. Johnson, 390 So.2d 103 (Fla.Dist.Ct.App.1980); see Randolph v. Schuyler, 201 S.E.2d 833 (N.C.1974) (contract after representation). Some courts follow a different rule for contracts made before the representation, e.g., Jacobs v. Holston, 434 N.E.2d 738 (Ohio Ct.App.1980), while others require the lawyer to show that the contract is reasonable. E.g., McKenzie Constr., Inc. v. Maynard, 758 F.2d 97 (3d Cir.1985); Nolan v. Foreman, 665 F.2d 738 (5th Cir.1982); Jacobson v. Sassower, 489 N.E.2d 1283 (N.Y.1985); see Seyfarth, Shaw, Fairweather & Geraldson v. Lake Fairfax Seven Ltd. Partnership, 480 S.E.2d 471 (Va.1997) (reasonableness of hours). See generally J. Shepherd, The Law of Fiduciaries 126-30 (1981) (discussing prevalence of burden-shifting rules and presumptions throughout fiduciary law); Cooter & Freedman, The Fiduciary

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

REST 3d LGOVL § 42                                                                                    Page 4
Restatement (Third) of Law Governing Law. § 42 (2000)


Relationship: Its Economic Character and Legal Consequences, 66 N.Y.U. L. Rev. 1045 (1991).

[...annotations omitted]

REST 3d LGOVL § 42

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

# APPENDIX D

Div.1988); cf. Greenberg v. Jerome H.
Remick & Co., 129 N.E. 211 (N.Y.
1920).

## TOPIC 2.  A LAWYER'S CLAIM TO COMPENSATION

Introductory Note

**Section**

38. Client–Lawyer Fee Contracts
39. A Lawyer's Fee in the Absence of a Contract
40. Fees on Termination

---

 **Introductory Note**: This Topic sets forth rules governing the compensation of lawyers: the creation and construction of fee contracts (see § 38; see also § 18); the lawyer's right to recover the fair value of services rendered when there is no enforceable contract (see § 39); and modification of fee arrangements when the client-lawyer relationship is terminated before the lawyer has finished providing the contemplated legal services (see § 40). Compared to the usual rules of contract law, those described in this Topic seek to protect clients by placing the burden of specifying contractual arrangements on the lawyer and by allowing clients to change lawyers without having to pay double fees.

## § 38.  Client–Lawyer Fee Contracts

 (1) **Before or within a reasonable time after beginning to represent a client in a matter, a lawyer must communicate to the client, in writing when applicable rules so provide, the basis or rate of the fee, unless the communication is unnecessary for the client because the lawyer has previously represented that client on the same basis or at the same rate.**

 (2) **The validity and construction of a contract between a client and a lawyer concerning the lawyer's fees are governed by § 18.**

 (3) **Unless a contract construed in the circumstances indicates otherwise:**

  (a) **a lawyer may not charge separately for the lawyer's general office and overhead expenses;**

  (b) **payments that the law requires an opposing party or that party's lawyer to pay as attorney-fee**

**awards or sanctions are credited to the client, not the client's lawyer, absent a contrary statute or court order; and**

**(c) when a lawyer requests and receives a fee payment that is not for services already rendered, that payment is to be credited against whatever fee the lawyer is entitled to collect.**

**Comment:**

*a.   Scope and cross-references.* This Section concerns fee contracts between clients and lawyers. A lawyer's contract with a non-client to pay the fee of a client (see generally § 134) is subject to similar rules under general law if, for example, the fee-payor is a spouse or parent of the client and is thus in a situation similar to that of a client.

A fee contract may not provide for an unreasonably large fee (see § 34) or violate the other restrictions on fee arrangements (see §§ 35–37).

A fee contract must meet the usual requirements of contract law as well as the special rules of § 18. Subsection (1) incorporates the disciplinary rules requiring lawyers to disclose the basis or rate of their fees at the outset of a representation. Subsection (3) implements the general principle of construction for client-lawyer contracts in § 18 by providing three rules of construction concerning fees.

When there is an enforceable contract, it governs the rights of both lawyer and client, and, unless both agree, neither can elect to set it aside and proceed under § 39 (see Restatement of Restitution § 107). When a fee contract is unenforceable, the lawyer can proceed under § 39 for the fair value of services rendered, unless entering an unenforceable contract warrants forfeiture of the lawyer's compensation (see § 37 & § 39, Comment *e*). Section 40 deals with the effect of a lawyer's discharge or withdrawal on a fee contract.

*b.   A lawyer's duty to inform a client.* Subsection (1) sets forth the lawyer's duty to inform a client of the basis or rate of the fee. Noncompliance with that duty is enforceable through professional discipline and by limiting the lawyer's remuneration to the fair-value standard described in § 39. When the client is already aware of the basis or rate of the fee, for example because the client's letter states that the client will pay a specified hourly fee for specific services, the lawyer need not further inform the client. The client should also be informed if the lawyer proposes to use a different basis or rate in the event of settlement, trial, or appeal.

278

ot the
court

a fee
lered,
r fee

fee con-
th a non-
subject to
ayor is a
ar to that

e fee (see
ee §§ 35–

itract law
rates the
r rate of
iplements
ts in § 18

rights of
ect to set
estitution
1 proceed
tering an
ompensa-
effect of

ets forth
the fee.
fessional
air-value
e of the
er states
ices, the
also be
te in the

The lawyer should inform the client early enough so that the client will not be inconvenienced unnecessarily if, upon considering the information, the client decides to seek another lawyer. The basis or rate might be a specified hourly charge, a percentage, or a set of factors on which the fee will be based. If the fee is based on a percentage of recovery (or other base), the client should also be informed if a different percentage applies in the event of settlement, trial, or appeal. For a client sophisticated in retaining lawyers, a statement that "we will charge our usual hourly rates" ordinarily will suffice. The less specific the notice, the less it should control a tribunal passing on the propriety of the fee. Thus, a lawyer's statement "I will charge what I think fair, in light of the hours expended and the results obtained," even if deemed part of a valid contract, does not bind the client or tribunal to accept whatever fee the lawyer thinks fair. The level of information imparted to the client might comply with disciplinary rules but not give rise to an enforceable contract.

The information should indicate the matter for which the fee will be due, for example, "preparing and trying (but not appealing) your auto injury suit." If the services are not specifically described, the lawyer will be held under § 18 to provide the services that a reasonable client would have expected.

Most states require that contingent-fee contracts be in writing. Even when there is no such requirement, tribunals are reluctant to uphold oral contingent-fee contracts. Tribunals adjudicating fee disputes are free to reject a lawyer's testimony concerning the fee when the client testifies more credibly to the contrary. The statute of frauds might render unenforceable some unwritten client-lawyer contracts (see Restatement Second, Contracts § 130).

*c.  Representation without charge.* Lawyers sometimes represent clients without payment. A lawyer's agreement, explicit or implicit, to render services without charge is as enforceable as any other fee contract. The lawyer's obligation to seek no compensation can also result from a waiver or estoppel (see Restatement Second, Contracts § 90). When a client reasonably believes that no compensation will be expected, the client does not owe the lawyer a fee. Circumstances indicating such a belief include the small quantity of legal services in question, the absence of any history of paid legal services by the lawyer for the client, and the client's evident indigence. Compare Restatement Second, Agency § 411 (pay due unless circumstances indicate agent was not to be compensated). On payment for a preliminary consultation not leading to employment, see § 15, Comment g.

*d.  Construction of fee contracts.* Under § 18, a contract between a client and lawyer is to be construed as a reasonable client would

279

have construed it, considering the contract in the circumstances in which it was made (see § 18, Comment *h*).

*e. Disbursements.* Under generally prevailing practice, the actual amount of disbursements to persons outside the office for hired consultants, printers' bills, out-of-town travel, long-distance telephone charges, and the like ordinarily are charges in addition to the lawyer's fee. Reimbursement is limited to the actual amount of disbursements the lawyer was authorized to make under the lawyer's general authority or a more specific delegation or contract (see §§ 21–23). Compare Restatement Second, Agency §§ 438(2)(a) and 439(e) (principal must indemnify agent for payment authorized or necessary in managing principal's affairs or where agent was not officious in making expenditure, principal was benefited, and it would be inequitable not to indemnify). See also § 17 as to a client's duty to indemnify a lawyer for certain expenses. As to whether a nonclient who provides goods and services can hold the client or lawyer liable for them, see §§ 26, 27, and 30.

Court costs and expenses of litigation, such as filing fees, expert-witness fees, and witness expenses, are normally payable by clients. In most states, a lawyer may not advance such expenses unless the client is obligated to repay them out of the client's recovery (see § 36(2) & Comment *c* thereto). Under a contingent-fee contract, however, a client who does not prevail is not liable to the lawyer for court costs and litigation expenses, unless the client agreed to pay them or nonrefundable advances by the lawyer of such costs and expenses are unlawful in the jurisdiction.

Subsection (3)(a) provides that, unless the contract construed in its circumstances provides otherwise, a lawyer may not recover from a client payment in addition to the agreed fee for items of general office and overhead expense such as secretarial costs and word processing. A client lacking knowledge of the lawyer's usual practice cannot be expected to assume that the lawyer will charge extra for such expenses. The lawyer may, however, charge separately for such items if the client was told of the billing practice at the outset of the representation or was familiar with it from past experience with the lawyer or (in the case of a general billing custom in the area) from past experiences with other lawyers.

*f. Payments by an opposing party.* Prevailing litigants in some types of litigation are entitled to recover attorney fees from an opposing party. On possible conflict-of-interest considerations in such cases, see § 125, Comment *f.* A litigant might be awarded a monetary sanction imposed on the opposing party (see § 110, Comment *g*). Most fee statutes provide for recovery by a "prevailing party" rather than

the party's lawyer. Under this Section, if a lawyer for the prevailing litigant does not foresee and contract for the possibility of a court-awarded fee consistently with §§ 18 and 34, the client rather than the lawyer is entitled to any such fee and can settle or waive the right to recover such a fee. The lawyer will recover from the client the fee otherwise contracted for or, in the absence of any contract, the fair value of services the client received as provided in § 39.

However, the fee award would go to the lawyer rather than the client if the parties had reached an enforceable contract so providing or if law or the tribunal so directed. Such a contract must comply with §§ 18 and 34–37, but would not ordinarily constitute a client-lawyer business arrangement subject to § 126. Also, in a suit in which a fee award is available, if client and a lawyer have neither agreed to a basis or rate for a fee nor agreed that the lawyer will serve without payment, it is ordinarily appropriate to assume that the lawyer's fee is to be any attorney-fee award. A contract providing that a lawyer is to receive both a standard contractual fee and a fee award, without crediting the award against the contractual fee, is presumptively unreasonable under § 34.

**Illustrations:**

1. Lawyer agrees to represent Client in a lawsuit for an hourly fee. Because the opposing party defends the suit in bad faith, the court orders that party to pay reasonable attorney fees. The payment goes to Client, not Lawyer, unless they have otherwise agreed. A contract that Lawyer should receive the payment might sometimes be inferred from the circumstances, for example if the lawyer was to be paid a flat fee and the opposing party's bad faith had greatly extended the services required beyond what might have been expected.

2. Lawyer agrees to represent Client in a lawsuit without discussing attorney fees or the possibility that the opposing party will be ordered to pay attorney fees. The suit is brought under a statute that has been construed to entitle virtually all prevailing plaintiffs to attorney fees. Client prevails, recovering $10,000 in damages and $5,000 in attorney fees. In the absence of special circumstances indicating agreement between Client and Lawyer to the contrary, Client is entitled to the $10,000 damage award and Lawyer to the $5,000 fee award.

This Section does not address who should pay attorney fees or sanctions, as opposed to who should receive them. The court ordering

the fee or sanction payment usually specifies the payor (see §§ 29 & 30). This Section also does not address who should receive attorney-fee awards under the "common fund" or "common benefit" doctrines.

*g. An advance payment, engagement-retainer fee, or lump-sum fee.* A fee payment that does not cover services already rendered and that is not otherwise identified is presumed to be a deposit against future services. The lawyer's fee for those services will be calculated according to any valid fee contract or, if there is none, under the fair-value standard of § 39. If that fee is less than the deposit, the lawyer must refund the surplus (see § 33(1)). If the fee exceeds the deposit, the client owes the lawyer the difference. The deposit serves as security for the payment of the fee. See also § 43 (considering other security devices); § 44, Comment *f* (considering when lawyer may transfer advance-fee payment to lawyer's personal account).

A client and lawyer might agree that a payment is an engagement-retainer fee (see § 34, Comment *e*) rather than a deposit. Clients who pay a fee without receiving an explanation ordinarily will assume that they are paying for services, not readiness (see § 38(3)(c)). A client and lawyer might also agree that an advance payment is neither a deposit nor an engagement retainer, but a lump-sum fee constituting complete payment for the lawyer's services. Again, the lawyer must adequately explain this to the client. In any event, an engagement-retainer or lump-sum fee must be reasonable (see § 34 & Comment *d* thereto). If the lawyer withdraws or is discharged prematurely or for other misconduct, the contractual fee might be subject to reduction (see § 40, Illustration 3; see also § 37 (fee forfeiture)).

*h. Interest.* A client and lawyer may agree for the payment of a reasonable amount in interest on past-due and unpaid charges of the lawyer (see §§ 18 & 34). In the absence of contract, the lawyer's entitlement to interest is determined by other law. Similarly, a lawyer's right to receive interest on cost and similar advances (see § 36(2)) is determined either by contract or other law.

### REPORTER'S NOTE

*Comment b. A lawyer's duty to inform a client.* ABA Model Rules of Professional Conduct, Rule 1.5(b) (1983) ("When the lawyer has not regularly represented the client, the basis or rate of the fee shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the represen-tation."). See generally ABA Formal Opin. 93–379 (1993); Gillers, Caveat Client: How the Proposed Final Draft of the Restatement of the Law Governing Lawyers Fails to Protect Unsophisticated Consumers in Fee Agreements with Lawyers, 10 Geo. J. Legal Ethics 581 (1997). On the effect of unspecific notice, see, e.g., Finch v.

; §§ 29 &
orney-fee
doctrines.

*ump-sum*
lered and
it against
:alculated
· the fair-
ie lawyer
: deposit,
:erves as
ing other
:yer may

i engage-
t. Clients
ll assume
(3)(c)). 'A
is neither
:nstituting
yer must
agement-
mment *d*
:ly or for
reduction

nent of a
:es of the
lawyer's
y, a law-
:ces (see

A Formal
·s, Caveat
'inal Draft
Law Gov-
·otect Un-
in Fee
10 Geo. J.
the effect
., Finch v.

Hughes Aircraft, 469 A.2d 867 (Md.
Ct.Spec.App.1984) (lawyer committed
fraud by billing without notice for
time spent on previous related mat-
ter); First Nat'l Bank v. Brink, 361
N.E.2d 406 (Mass.1977) (where con-
tract provides for payment without
specifying amount, lawyer recoups
what court finds to be fair and rea-
sonable); Jacobs v. Holston, 434
N.E.2d 738 (Ohio Ct.App.1980)
(where contract states hourly fee but
not number of hours, lawyer must
show what hours were actually and
reasonably devoted to case).

ABA Model Rule 1.5(c) requires
contingent-fee contracts to be in writ-
ing. Accord, e.g., Calif. Bus. & Prof.
Code § 6147; Illinois Code of Profes-
sional Responsibility, DR 2–106(c).
See N.J. Rules of Professional Con-
duct, Rule 1.5(b) (written notice re-
quired for all fees where lawyer has
not regularly represented client); 1 G.
Hazard & W. Hodes, The Law of
Lawyering 112 (2d ed. 1990) (urging
similar rule). For examples of reluc-
tance to uphold disputed oral-fee ar-
rangements, see Foodtown, Inc. v.
Argonaut Ins., 102 F.3d 483 (11th
Cir.1996); Kirby v. Liska, 334 N.W.2d
179 (Neb.1983) (contingent fee); Bec-
nel v. Montz, 384 So.2d 1015 (La.Ct.
App.1980); Roehrdanz v. Schlink, 368
N.W.2d 409 (Minn.Ct.App.1985). On
the other hand, if a contract is suffi-
ciently proved, a court in a jurisdic-
tion in which a writing is required
will often permit the lawyer a fair-
value recovery in the absence of any
indication of overreaching. E.g., Vac-
caro v. Estate of Gorovoy, 696 A.2d
724 (N.J.Super.Ct.App.Div.1997). For
construction of unclear contracts to
require the lawyer to provide repre-
sentation on appeal, see § 18, Report-
er's Note to Comment *e*.

*Comment c. Representation with-
out charge.* See ABA Model Rules of
Professional Conduct, Rule 6.1 (1983)
("A lawyer should render public in-
terest legal service" for example "by
providing professional services at no
fee or a reduced fee to persons of
limited means or to public service or
charitable groups or organizations").
On circumstances indicating that ser-
vices were gratuitous, see, e.g.,
Briggs v. Clinton County Bank &
Trust Co., 452 N.E.2d 989 (Ind.Ct.
App.1983) (history of services over
the years without bill or payment); In
re Cutler & Horgan, 212 N.W. 573
(Iowa 1927) (lawyer brother of client,
who had other counsel); In re Estate
of Orris, 622 P.2d 337 (Utah 1980)
(lawyer's services performed out of
friendship and reciprocity); Cadle v.
Black, 154 P. 997 (Wyo.1916) (lawyer
offered to serve without charge).

*Comment e. Disbursements.* See
generally ABA Formal Opin. 93–379
(1993); 1 S. Speiser, Attorney's Fees
§§ 1:46–49 (1973). For items pre-
sumptively nonrecoverable from a
client, see Ramos Colon v. Secretary
of Health & Human Services, 850
F.2d 24 (1st Cir.1988) (computer and
word processing time); In re Ireland,
706 P.2d 352 (Ariz.1985) (secretarial
costs); In re Estate of Muccini, 460
N.Y.S.2d 680 (N.Y.Sur.Ct.1983) (nor-
mal operating overhead costs; but
other out-of-pocket disbursements
are recoverable); 1 B. Witkin, Califor-
nia Procedure § 140 (3d ed.1985); cf.
In re Zaleon, 494 S.E.2d 669 (Ga.
1998) (discipline for adding surcharge
to disbursements without disclosure
to client); Henican, James & Cleve-
land v. Strate, 348 So.2d 689 (La.Ct.
App.1977) ("out of pocket expenses"
does not include in-office copying ex-
penses). For items presumptively re-
coverable, see Roberts, Walsh & Co.