# Exhibit A



FRANK FREED
SUBIT & THOMAS LLP
ATTORNEYS AT LAW

May 15, 2007

**Sent Via E-mail and U.S. Mail**

Victor Terence Washington
219 NW 196th Place
Shoreline, WA  98177

SUITE 1200
HOGE BUILDING
705 SECOND AVENUE
SEATTLE, WASHINGTON
98104-1798

*Phone* (206) 682-6711
*Fax* (206) 682-0401

STEVEN B. FRANK
CLIFFORD FREED
MICHAEL C. SUBIT
JOYCE L. THOMAS
SEAN MARSHALL PHELAN
BETH BARRETT BLOOM

Re:   *Victor Terence Washington and Starbucks Coffee Company*

Dear Mr. Washington:

As we discussed during our telephone conference on May 14, 2007, with respect to the above-referenced matter, I am attaching hereto a Limited Duration Hourly Fee Agreement for advice and counsel, document review and analysis, client conferences, drafting of correspondence, legal research, and negotiations in an attempt to secure for you the following:

1.   A transference from your current position at Starbucks to a more desirable position where you will not be under the supervision of Mike Jackman; or, alternatively,
2.   A separation package that you will find acceptable.

As we have discussed, you understand that Starbucks is not required to transfer you nor are they required to tender to you a separation package.

Please review the attached Agreement, and if the same is satisfactory, kindly sign and return the signed Agreement along with a $1,500.00 attorneys' fees advance and costs advance which, as I have advised you, will be deposited into this firm's trust account. A self-addressed stamped envelope is enclosed for you convenience. We will be unable to commence our representation of you until we receive the executed Agreement and the $1,500.00 advance.

If you have any questions regarding the Agreement, please do not hesitate to contact me. I want you to understand completely the contents of the enclosed Agreement prior to signature.

Z:\U-Z\Washington, Victor\Correspondence\Client ltr - Agreement Cover 5.15.07.doc

Victor Terence Washington
May 15, 2007
Page 2 of 2

Thank you for your attention to the foregoing.

I look forward to working with you.

Yours truly,

Joyce L. Thomas

JLT/jp
Enclosures:    Limited Duration Hourly Fee Agreement
               Rules of Professional Conduct

## LIMITED DURATION HOURLY FEE AGREEMENT
### REGARDING VICTOR TERENCE WASHINGTON and STARBUCKS COFFEE COMPANY

Victor Terence Washington, referred to as the "Client," hereby agrees to retain Joyce L. Thomas and the law firm of Frank Freed Subit & Thomas LLP, hereinafter referred to as the "Attorneys", in connection with his employment-related claims regarding his current employment at Starbucks (hereinafter referred to as "the case"). Client agrees to pay an attorneys' fees advance and costs advance of $1,500.00. Client agrees that the $1,500.00 shall be deposited into the Attorneys' client trust account, and fees and costs will be drawn against that account as incurred and billed.

In return for compensation on an hourly basis and compensation for expenses incurred on behalf of the Client, the Attorneys agree to provide advice and counsel, document review and analysis, client conferences, drafting of correspondence, legal research, and negotiations in an attempt to secure for the Client the following:

1.    A transference from the Client's current position at Starbucks to a more desirable position where he will not be under the supervision of Mike Jackman; or, alternatively,

2.    A separation package that the Client finds acceptable.

The Client understands that there is no legal requirement that Starbucks offer to him a job transfer or tender to him a separation package.

It is understood that the hourly time charges include, but are not limited to, time spent on: telephone conferences; office conferences; legal research (including the cost of on-line computer research); review of file materials and documents sent or received; negotiation services; drafting office memoranda and correspondence. Client will be billed at an hourly rate of $350.00 for Joyce L. Thomas's time and at the usual hourly rate, which varies, for associates, or partner time. Client understands and agrees that work may be performed by other employees of the Attorneys, at the discretion of the Attorneys.

In addition to fees, Client is responsible for all costs that are incurred in the handling of this case. Those costs include, but are not limited to: costs associated with any necessary travel; postage; photocopying; facsimiles; and long-distance telephone expenses.

Monthly billings will be submitted to the Client reflecting hours worked and costs incurred. The fee advance shall be applied to the billings and credited to the Client. All monthly billings shall be due and payable upon receipt, unless otherwise agreed. Past due billings of longer than one (1) month shall accrue interest at 1% per month. Client understands that if any bill is not paid in full within the requisite time period, that the Attorneys reserve the right to take legal action to obtain the amount owing.

Client understands that the Attorneys reserve the right to decline further representation if he fails to pay any bill in a timely manner. Client also understands that the Attorneys reserve the

- 1 -

right to decline further representation at the expiration of this agreement. This agreement is effective immediately upon signature by both parties and will terminate upon completion of services as defined in the second paragraph of this agreement except that this contract may be terminated by either party by written notification to the other party of said termination. Such termination is effective upon receipt of the notification. If either Attorneys or the Client terminates this agreement before its expiration, the Client is still responsible for any outstanding attorneys' fees and costs. If the Attorneys terminate this agreement before its expiration, it will do so in a manner consistent with Rule 1.15 of the Rules of Professional Conduct. If at any time Attorneys determine that it is necessary to withdraw from representing Client, they may do so and may file an attorneys' lien based on the hours they have expended on Client's behalf at the usual hourly rate of those persons performing the work.

Pursuant to the Rules of Professional Conduct 1.2(c), the Attorneys limit the scope of representation to the issues directly related to the matters described in the second paragraph. By entering into this agreement, the Attorneys do not agree to represent Client in any litigation or arbitration proceeding without a separate and distinct fee agreement for such services.

The Client understands that a successful resolution of the case may have significant tax consequences for the Client. The Client understands that Attorneys are not tax advisors. The Client is advised to consult a tax advisor.

The Client further understands that Attorneys cannot guarantee a successful resolution of this matter.

Client agrees to inform the Attorneys of any change of contact information, such as his address and telephone number, while this agreement is in effect and the Client has an outstanding bill with the Attorneys. In addition, Client agrees that he will inform the Attorneys if he will not be receiving mail/messages from the contact location for any duration in excess of one (1) week.

The Attorneys have provided Client with an opportunity to ask any questions regarding this agreement and Client has informed the Attorneys that he understands its terms, and his ability to understand this agreement is not impaired in any way.

Your signature below means that you agree to be bound by the terms of this agreement.

DATED: _____        DATED: _____


FRANK FREED SUBIT & THOMAS LLP        CLIENT:


_____        _____
BY:    JOYCE L. THOMAS, PARTNER        VICTOR TERENCE WASHINGTON

Enclosure: Copy of RPC 1.2, 1.3, 1.4, 1.5, 1.6, 1.7 and 1.15

- 2 -





**Courts Home  |  Court Rules**                    Search | Site Map | ?| eService Center

RPC RULE 1.2
SCOPE OF REPRESENTATION AND ALLOCATION OF AUTHORITY BETWEEN CLIENT
AND LAWYER

(a) Subject to paragraphs (c) and (d), a lawyer shall abide by a
client's decisions concerning the objectives of representation and,
as required by Rule 1.4, shall consult with the client as to the
means by which they are to be pursued. A lawyer may take such action
on behalf of the client as is impliedly authorized to carry out the
representation. A lawyer shall abide by a client's decision whether
to settle a matter. In a criminal case, the lawyer shall abide by the
client's decision, after consultation with the lawyer, as to a plea
to be entered, whether to waive jury trial and whether the client
will testify.

(b) A lawyer's representation of a client, including representation
by appointment, does not constitute an endorsement of the client's
political, economic, social or moral views or activities.

(c) A lawyer may limit the scope of the representation if the
limitation is reasonable under the circumstances and the client gives
informed consent.

(d) A lawyer shall not counsel a client to engage, or assist a
client, in conduct that the lawyer knows is criminal or fraudulent,
but a lawyer may discuss the legal consequences of any proposed
course of conduct with a client and may counsel or assist a client to
make a good faith effort to determine the validity, scope, meaning or
application of the law.

Comment

Allocation of Authority between Client and Lawyer

[1] Paragraph (a) confers upon the client the ultimate authority
to determine the purposes to be served by legal representation,
within the limits imposed by law and the lawyer's professional
obligations. The decisions specified in paragraph (a), such as
whether to settle a civil matter, must also be made by the client.
See Rule 1.4(a)(1) for the lawyer's duty to communicate with the
client about such decisions. With respect to the means by which the
client's objectives are to be pursued, the lawyer shall consult with
the client as required by Rule 1.4(a)(2) and may take such action as
is impliedly authorized to carry out the representation.

[2] On occasion, however, a lawyer and a client may disagree about
the means to be used to accomplish the client's objectives. Clients
normally defer to the special knowledge and skill of their lawyer
with respect to the means to be used to accomplish their objectives,
particularly with respect to technical, legal and tactical matters.
Conversely, lawyers usually defer to the client regarding such

questions as the expense to be incurred and concern for third persons
who might be adversely affected. Because of the varied nature of the
matters about which a lawyer and client might disagree and because
the actions in question may implicate the interests of a tribunal or
other persons, this Rule does not prescribe how such disagreements
are to be resolved. Other law, however, may be applicable and should
be consulted by the lawyer. The lawyer should also consult with the
client and seek a mutually acceptable resolution of the disagreement.
If such efforts are unavailing and the lawyer has a fundamental
disagreement with the client, the lawyer may withdraw from the
representation. See Rule 1.16(b)(4). Conversely, the client may
resolve the disagreement by discharging the lawyer. See Rule 1.16(a)(3).

[3] At the outset of a representation, the client may authorize
the lawyer to take specific action on the client's behalf without
further consultation. Absent a material change in circumstances and
subject to Rule 1.4, a lawyer may rely on such an advance
authorization. The client may, however, revoke such authority at any time.

[4] In a case in which the client appears to be suffering
diminished capacity, the lawyer's duty to abide by the client's
decisions is to be guided by reference to Rule 1.14.

Independence from Client's Views or Activities

[5] Legal representation should not be denied to people who are
unable to afford legal services, or whose cause is controversial or
the subject of popular disapproval. By the same token, representing a
client does not constitute approval of the client's views or activities.

Agreements Limiting Scope of Representation

[6] The scope of services to be provided by a lawyer may be
limited by agreement with the client or by the terms under which the
lawyer's services are made available to the client. When a lawyer has
been retained by an insurer to represent an insured, for example, the
representation may be limited to matters related to the insurance
coverage. A limited representation may be appropriate because the
client has limited objectives for the representation. In addition,
the terms upon which representation is undertaken may exclude
specific means that might otherwise be used to accomplish the
client's objectives. Such limitations may exclude actions that the
client thinks are too costly or that the lawyer regards as repugnant
or imprudent.

[7] Although this Rule affords the lawyer and client substantial
latitude to limit the representation, the limitation must be
reasonable under the circumstances. If, for example, a client's
objective is limited to securing general information about the law
the client needs in order to handle a common and typically
uncomplicated legal problem, the lawyer and client may agree that the
lawyer's services will be limited to a brief telephone consultation.
Such a limitation, however, would not be reasonable if the time
allotted was not sufficient to yield advice upon which the client
could rely. Although an agreement for a limited representation does
not exempt a lawyer from the duty to provide competent
representation, the limitation is a factor to be considered when
determining the legal knowledge, skill, thoroughness and preparation
reasonably necessary for the representation. See Rule 1.1.

[8] All agreements concerning a lawyer's representation of a client must accord with the Rules of Professional Conduct and other law. See, e.g., Rules 1.1, 1.8 and 5.6.

See also Washington Comment [14].

Criminal, Fraudulent and Prohibited Transactions

[9] Paragraph (d) prohibits a lawyer from knowingly counseling or assisting a client to commit a crime or fraud. This prohibition, however, does not preclude the lawyer from giving an honest opinion about the actual consequences that appear likely to result from a client's conduct. Nor does the fact that a client uses advice in a course of action that is criminal or fraudulent of itself make a lawyer a party to the course of action. There is a critical distinction between presenting an analysis of legal aspects of questionable conduct and recommending the means by which a crime or fraud might be committed with impunity.

[10] When the client's course of action has already begun and is continuing, the lawyer's responsibility is especially delicate. The lawyer is required to avoid assisting the client, for example, by drafting or delivering documents that the lawyer knows are fraudulent or by suggesting how the wrongdoing might be concealed. A lawyer may not continue assisting a client in conduct that the lawyer originally supposed was legally proper but then discovers is criminal or fraudulent. The lawyer must, therefore, withdraw from the representation of the client in the matter. See Rule 1.16(a). In some cases, withdrawal alone might be insufficient. It may be necessary for the lawyer to give notice of the fact of withdrawal and to disaffirm any opinion, document, affirmation or the like. See Rule 4.1.

[11] Where the client is a fiduciary, the lawyer may be charged with special obligations in dealings with a beneficiary.

[12] Paragraph (d) applies whether or not the defrauded party is a party to the transaction. Hence, a lawyer must not participate in a transaction to effectuate criminal or fraudulent avoidance of tax liability. Paragraph (d) does not preclude undertaking a criminal defense incident to a general retainer for legal services to a lawful enterprise. The last clause of paragraph (d) recognizes that determining the validity or interpretation of a statute or regulation may require a course of action involving disobedience of the statute or regulation or of the interpretation placed upon it by governmental authorities.

[13] If a lawyer comes to know or reasonably should know that a client expects assistance not permitted by the Rules of Professional Conduct or other law or if the lawyer intends to act contrary to the client's instructions, the lawyer must consult with the client regarding the limitations on the lawyer's conduct. See Rule 1.4(a)(5).

Additional Washington Comment (14)

Agreements Limiting Scope of Representation

[14] An agreement limiting the scope of a representation shall consider the applicability of Rule 4.2 to the representation. (The provisions of this Comment were taken from former Washington RPC 1.2(c).) See also Comment [11] to Rule 4.2 for specific

considerations pertaining to contact with an otherwise represented
person to whom limited representation is being or has been provided.

[Amended effective September 1, 2006.]

Courts | Organizations | News | Opinions | Rules | Forms | Directory | Library
Back to Top | Privacy and Disclaimer Notices



Courts Home | Court Rules



Search | Site Map | eService Center

RULE 1.3
DILIGENCE

   A lawyer shall act with reasonable diligence and promptness in
representing a client.

Comment

   [1] [Washington revision] A lawyer should pursue a matter on behalf of a
client despite opposition, obstruction or personal inconvenience to the
lawyer, and take whatever lawful and ethical measures are required to
vindicate a client's cause or endeavor. A lawyer must also act with
commitment and dedication to the interests of the client and with diligence
in advocacy upon the client's behalf. A lawyer is not bound, however, to
press for every advantage that might be realized for a client. For example,
a lawyer may have authority to exercise professional discretion in
determining the means by which a matter should be pursued. See Rule 1.2.
The lawyer's duty to act with reasonable diligence does not require the use
of offensive tactics or preclude the treating of all persons involved in
the legal process with courtesy and respect.

   [2] A lawyer's work load must be controlled so that each matter can be
handled competently.

   [3] Perhaps no professional shortcoming is more widely resented than
procrastination. A client's interests often can be adversely affected by
the passage of time or the change of conditions; in extreme instances, as
when a lawyer overlooks a statute of limitations, the client's legal
position may be destroyed. Even when the client's interests are not
affected in substance, however, unreasonable delay can cause a client
needless anxiety and undermine confidence in the lawyer's trustworthiness.
A lawyer's duty to act with reasonable promptness, however, does not
preclude the lawyer from agreeing to a reasonable request for postponement
that will not prejudice the lawyer's client.

   [4] Unless the relationship is terminated as provided in Rule 1.16, a
lawyer should carry through to conclusion all matters undertaken for a
client. If a lawyer's employment is limited to a specific matter, the
relationship terminates when the matter has been resolved. If a lawyer has
served a client over a substantial period in a variety of matters, the
client sometimes may assume that the lawyer will continue to serve on a
continuing basis unless the lawyer gives notice of withdrawal. Doubt about
whether a client-lawyer relationship still exists should be clarified by
the lawyer, preferably in writing, so that the client will not mistakenly
suppose the lawyer, is looking after the client's affairs when the lawyer
has ceased to do so. For example, if a lawyer has handled a judicial or
administrative proceeding that produced a result adverse to the client and
the lawyer and the client have not agreed that the lawyer will handle the
matter on appeal, the lawyer must consult with the client about the
possibility of appeal before relinquishing responsibility for the matter.
See Rule 1q.4(a)(2). Whether the lawyer is obligated to prosecute the

appeal for the client depends on the scope of the representation the lawyer
has agreed to provide to the client. See Rule 1.2.

  [5] [Reserved.]


[Amended effective September 1, 2006.]

Courts | Organizations | News | Opinions | Rules | Forms | Directory | Library
Back to Top | Privacy and Disclaimer Notices





Courts Home | Court Rules                        Search | Site Map | eService Center

RPC RULE 1.4
COMMUNICATION

(a) A lawyer shall;

(1) promptly inform the client of any decision of circumstance with respect to which the client's informed consent, as defined in Rule 1.0(e), is required by these Rules;

(2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;

(3) keep the client reasonably informed about the status of the matter;

(4) promptly comply with reasonable requests for information; and

(5) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional Conduct or other law.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

Comment

[1] Reasonable communication between the lawyer and the client is necessary for the client effectively to participate in the representation.

Communicating with Client

[2] If these Rules require that a particular decision about the representation be made by the client, paragraph (a)(1) requires that the lawyer promptly consult with and secure the client's consent prior to taking action unless prior discussions with the client have resolved what action the client wants the lawyer to take. For example, a lawyer who receives from opposing counsel an offer of settlement in a civil controversy or a proffered plea bargain in a criminal case must promptly inform the client of its substance unless that client has previously indicated that the proposal will be acceptable or unacceptable or has authorized the lawyer to accept or to reject the offer. See Rule 1.2(a).

[3] Paragraph (a)(2) requires the lawyer to reasonably consult with the client about the means to be used to accomplish the client's objectives. In some situations - depending on both the importance of the action under consideration and the feasibility of consulting with the client - this duty will require consultation prior to taking action. In other circumstances, such as during a trial when an immediate decision must be made, the exigency of the situation may require the lawyer to act without prior consultation. In such cases the lawyer must nonetheless act reasonably to inform the client of actions the lawyer has taken on the client's behalf.

Additionally, paragraph (a)(3) requires that the lawyer keep the client reasonably informed about the status of the matter, such as significant developments affecting the timing or the substance of the representation.

[4] A lawyer's regular communication with clients will minimize the occasions on which a client will need to request information concerning the representation. When a client makes a reasonable request for information, however, paragraph (a)(4) requires prompt compliance with the request, or if a prompt response is not feasible, that the lawyer, or a member of the lawyer's staff, acknowledge receipt of the request and advise the client when a response may be expected. Client telephone calls should be promptly returned or acknowledged.

Explaining Matters

[5] The client should have sufficient information to participate intelligently in decisions concerning the objectives of the representation and the means by which they are to be pursued, to the extent the client is willing and able to do so. Adequacy of communication depends in part on the kind of advice or assistance that is involved. For example, when there is time to explain a proposal made in a negotiation, the lawyer should review all important provisions with the client before proceeding to an agreement. In litigation a lawyer should explain the general strategy and prospects of success and ordinarily should consult the client on tactics that are likely to result in significant expense or to injure or coerce others. On the other hand, a lawyer ordinarily will not be expected to describe trial or negotiation strategy in detail. The guiding principle is that the lawyer should fulfill reasonable client expectations for information consistent with the duty to act in the client's best interests, and the client's overall requirements as to the character of representation. In certain circumstances, such as when a lawyer asks a client to consent to a representation affected by a conflict of interest, the client must give informed consent, as defined in Rule 1.0(e).

[6] Ordinarily, the information to be provided is that appropriate for a client who is a comprehending and responsible adult. However, fully informing the client according to this standard may be impracticable, for example, where the client is a child or suffers from diminished capacity. See Rule 1.14. When the client is an organization or group, it is often impossible or inappropriate to inform every one of its members about its legal affairs; ordinarily, the lawyer should address communications to the appropriate officials of the organization. See Rule 1.13. Where many routine matters are involved, a system of limited or occasional reporting may be arranged with the client.

Withholding Information

[7] In some circumstances, a lawyer may be justified in delaying transmission of information when the client would be likely to react imprudently to an immediate communication. Thus, a lawyer might withhold a psychiatric diagnosis of a client when the examining psychiatrist indicates that disclosure would harm the client. A lawyer may not withhold information to serve the lawyer's own interest or convenience or the interests or convenience of another person. Rules or court orders governing litigation may provide that information supplied to a lawyer may not be disclosed to the client. Rule 3.4(c) directs compliance with such rules or orders.

[Amended effective September 1, 2006.]

Washington Courts                                                    Page 3 of 3

http://www.courts.wa.gov/court_rules/?fa=court_rules.display&group=ga&set=RPC&ruleid...   5/9/2007

Ex A - p. 013





Courts Home  |  Court Rules

Search | Site Map | ⬚ eService Center

RULE 1.5
FEES

(a) A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses.  The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services;

(8) whether the fee is fixed or contingent; and

(9) the terms of the fee agreement between the lawyer and the client, including whether the fee agreement or confirming writing demonstrates that the client had received a reasonable and fair disclosure of material elements of the fee agreement and of the lawyer's billing practices.

(b) The scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation except when the lawyer will charge a regularly represented client on the same basis or rate.  Any changes in the basis or rate of the fee or expenses shall also be communicated to the client.  Upon the request of the client in any matter, the lawyer shall communicate to the client in writing the basis or rate of the fee.

(c) A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (d) or other law. If a fee is contingent on the outcome of a matter, a lawyer shall comply with the following

(1) A contingent fee agreement shall be in a writing and signed by the client;

(2) A contingent fee agreement shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal; litigation and other expenses to be deducted from the recovery; and

whether such expenses are to be deducted before or after the contingent fee is calculated. The agreement must clearly notify the client of any expenses for which the client will be liable, whether or not the client is the prevailing party;

(3) Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination; and

(4) A contingent fee consisting of a percentage of the monetary amount recovered for a claimant, in which all or part of the recovery is to be paid in the future, shall be paid only

(i) by applying the percentage to the amounts recovered as they are received by the client; or

(ii) by applying the percentage to the actual cost of the settlement or award to the defendant.

(d) A lawyer shall not enter into an arrangement for, charge, or collect:

(1) any fee in a domestic relations matter, the payment or amount of which is contingent upon the securing of a dissolution or annulment of marriage or upon the amount of maintenance or support, or property settlement in lieu thereof; or

(2) a contingent fee for representing a defendant in a criminal case.

(e) A division of a fee between lawyers who are not in the same firm may be made only if:

(1) (i) the division is in proportion to the services provided by each lawyer or each lawyer assumes joint responsibility for the representation;

(ii) the client agrees to the arrangement, including the share each lawyer will receive, and the agreement is confirmed in writing; and

(iii) the total fee is reasonable; or

(2) the division is between the lawyer and a duly authorized lawyer referral service of either the Washington State Bar Association or of one of the county bar associations of this state.

Comment
Reasonableness of Fee and Expenses

(1) Paragraph (a) requires that lawyers charge fees that are reasonable under the circumstances. The factors specified in (1) through (9) are not exclusive. Nor will each factor be relevant in each instance. Paragraph (a) also requires that expenses for which the client will be charged must be reasonable. A lawyer may seek reimbursement for the cost of services performed in-house, such as copying, or for other expenses incurred in-house, such as telephone charges, either by charging a reasonable amount to which the client has agreed in advance or by charging an amount that reasonably reflects the cost incurred by the lawyer.

See also Washington Comments [10] and [11].

Basis or Rate of Fee

[2] When the lawyer has regularly represented a client, they ordinarily will have evolved an understanding concerning the basis or rate of the fee and the expenses for which the client will be responsible. In a new client-lawyer relationship, however, an understanding as to fees and expenses must be promptly established. Generally, it is desirable to furnish the client with at least a simple memorandum or copy of the lawyer's customary fee arrangements that states the general nature of the legal services to be provided, the basis, rate or total amount of the fee and whether and to what extent the client will be responsible for any costs, expenses or disbursements in the course of the representation. A written statement concerning the terms of the engagement reduces the possibility of misunderstanding.

[3] [Reserved in part.] Contingent fees, like any other fees, are subject to the reasonableness standard of paragraph (a) of this Rule. In determining whether a particular contingent fee is reasonable, or whether it is reasonable to charge any form of contingent fee, a lawyer must consider the factors that are relevant under the circumstances.

Terms of Payment

[4] A lawyer may require advance payment of a fee, but is obliged to return any unearned portion. See Rule 1.16(d). A lawyer may accept property in payment for services, such as an ownership interest in an enterprise, providing this does not involve acquisition of a proprietary interest in the cause of action or subject matter of the litigation contrary to Rule 1.8 (i). However, a fee paid in property instead of money may be subject to the requirements of Rule 1.8(a) because such fees often have the essential qualities of a business transaction with the client.

[5] An agreement may not be made whose terms might induce the lawyer improperly to curtail services for the client or perform them in a way contrary to the client's interest. For example, a lawyer should not enter into an agreement whereby services are to be provided only up to a stated amount when it is foreseeable that more extensive services probably will be required, unless the situation is adequately explained to the client. Otherwise, the client might have to bargain for further assistance in the midst of a proceeding or transaction. However, it is proper to define the extent of services in light of the client's ability to pay. A lawyer should not exploit a fee arrangement based primarily on hourly charges by using wasteful procedures.

Prohibited Contingent Fees

[6] [Washington revision] Paragraph (d) prohibits a lawyer from charging a contingent fee in a domestic relations matter when payment is contingent upon the securing of a dissolution or annulment of marriage or upon the amount of maintenance or support or property settlement to be obtained. This provision does not preclude a contract for a contingent fee for legal representation in connection with the recovery of post-judgment balances due under support, maintenance or other financial orders because such contracts do not implicate the same policy concerns.

Division of Fee

[7] A division of fee is a single billing to a client covering the fee of two or more lawyers who are not in the same firm. A division of fee facilitates association of more than one lawyer in a matter in which neither alone could serve the client as well, and most often is used when the fee is contingent and the division is between a referring lawyer and a

trial specialist. Paragraph (e) permits the lawyers to divide a fee either
on the basis of the proportion of services they render or if each lawyer
assumes responsibility for the representation as a whole. In addition, the
client must agree to the arrangement, including the share that each lawyer
is to receive, and the agreement must be confirmed in writing. Contingent
fee agreements must be in a writing signed by the client and must
otherwise comply with paragraph (c) of this Rule. Joint responsibility for
the representation entails financial and ethical responsibility for the
representation as if the lawyers were associated in a partnership. A
lawyer should only refer a matter to a lawyer whom the referring lawyer
reasonably believes is competent to handle the matter. See Rule 1.1.

   [8] Paragraph (e) does not prohibit or regulate division of fees to be
received in the future for work done when lawyers were previously
associated in a law firm.

Disputes over Fees

   [9] If a procedure has been established for resolution of fee disputes,
such as an arbitration or mediation procedure established by the bar, the
lawyer must comply with the procedure when it is mandatory, and, even when
it is voluntary, the lawyer should conscientiously consider submitting to
it. Law may prescribe a procedure for determining a lawyer's fee, for
example, in representation of an executor or administrator, a class or a
person entitled to a reasonable fee as part of the measure of damages. The
lawyer entitled to such a fee and a lawyer representing another party
concerned with the fee should comply with the prescribed procedure.

Additional Washington Comments (10 ? 11)

Reasonableness of Fee and Expenses

   [10] Every fee agreed to, charged, or collected, including a fee
denominated as "nonrefundable" or "earned upon receipt," is subject to
Rule 1.5(a) and may not be unreasonable.

   [11] Under paragraph (a)(9), one factor in determining whether a fee is
reasonable is whether the fee agreement or confirming writing demonstrates
that the client received a reasonable and fair disclosure of material
elements of the fee agreement. Lawyers are encouraged to use written fee
agreements that fully and fairly disclose all material terms in a manner
easily understood by the client.


[Amended effective September 1, 2006.]





Courts Home | Court Rules

Search | Site Map | ⑦ eService Center

RULE 1.6
CONFIDENTIALITY OF INFORMATION

(a) A lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation or the disclosure is permitted by paragraph (b).

(b) A lawyer to the extent the lawyer reasonably believes necessary:

(1) shall reveal information relating to the representation of a client to prevent reasonably certain death or substantial bodily harm;

(2) may reveal information relating to the representation of a client to prevent the client from committing a crime;

(3) may reveal information relating to the representation of a client to prevent, mitigate or rectify substantial injury to the financial interests or property of another that is reasonably certain to result or has resulted from the client's commission of a crime or fraud in furtherance of which the client has used the lawyer's services;

(4) may reveal information relating to the representation of a client to secure legal advice about the lawyer's compliance with these Rules;

(5) may reveal information relating to the representation of a client to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved, or to respond to allegations in any proceeding concerning the lawyer's representation of the client;

(6) may reveal information relating to the representation of a client to comply with a court order; or

(7) may reveal information relating to the representation of a client to inform a tribunal about any breach of fiduciary responsibility when the client is serving as a court appointed fiduciary such as a guardian, personal representative, or receiver.


Comment
See also Washington Comment [19].

[1] [Washington revision] This Rule governs the disclosure by a lawyer of information relating to the representation of a client. See Rule 1.18 for the lawyer's duties with respect to information provided to the lawyer by a prospective client, Rule 1.9(c)(2) for the lawyer's duty not to reveal information relating to the lawyer's prior representation of a former client and Rules 1.8(b) and 1.9(c)(1) for the lawyer's duties with respect to the use of such information to the disadvantage of clients and former clients.

[2] A fundamental principle in the client-lawyer relationship is that, in the absence of the client's informed consent, the lawyer must not reveal information relating to the representation. See Rule 1.0(e) for the definition of informed consent. This contributes to the trust that is the hallmark of the client-lawyer relationship. The client is thereby encouraged to seek legal assistance and to communicate fully and frankly with the lawyer even as to embarrassing or legally damaging subject matter. The lawyer needs this information to represent the client effectively and, if necessary, to advise the client to refrain from wrongful conduct. Almost without exception, clients come to lawyers in order to determine their rights and what is, in the complex of laws and regulations, deemed to be legal and correct. Based upon experience, lawyers know that almost all clients follow the advice given, and the law is upheld.

[3] The principle of client-lawyer confidentiality is given effect by related bodies of law: the attorney-client privilege, the work product doctrine and the rule of confidentiality established in professional ethics. The attorney-client privilege and work-product doctrine apply in judicial and other proceedings in which a lawyer may be called as a witness or otherwise required to produce evidence concerning a client. The rule of client-lawyer confidentiality applies in situations other than those where evidence is sought from the lawyer through compulsion of law. The confidentiality rule, for example, applies not only to matters communicated in confidence by the client but also to all information relating to the representation, whatever its source. A lawyer may not disclose such information except as authorized or required by the Rules of Professional Conduct or other law. See also Scope.

[4] Paragraph (a) prohibits a lawyer from revealing information relating to the representation of a client. This prohibition also applies to disclosures by a lawyer that do not in themselves reveal protected information but could reasonably lead to the discovery of such information by a third person. A lawyer's use of a hypothetical to discuss issues relating to the representation is permissible so long as there is no reasonable likelihood that the listener will be able to ascertain the identity of the client or the situation involved.

Authorized Disclosure

[5] Except to the extent that the client's instructions or special circumstances limit that authority, a lawyer is impliedly authorized to make disclosures about a client when appropriate in carrying out the representation. In some situations, for example, a lawyer may be impliedly authorized to admit a fact that cannot properly be disputed or to make a disclosure that facilitates a satisfactory conclusion to a matter. Lawyers in a firm may, in the course of the firm's practice, disclose to each other information relating to a client of the firm, unless the client has instructed that particular information be confined to specified lawyers.

Disclosure Adverse to Client

[6] [Washington revision] Although the public interest is usually best served by a strict rule requiring lawyers to preserve the confidentiality of information relating to the representation of their clients, the confidentiality rule is subject to limited exceptions. Paragraph (b)(1) recognizes the overriding value of life and physical integrity and requires disclosure reasonably necessary to prevent reasonably certain death or substantial bodily harm. Such harm is reasonably certain to occur if it will be suffered imminently or if there is a present and substantial threat

Ex A - p. 019

that a person will suffer such harm at a later date if the lawyer fails to
take action necessary to eliminate the threat. Thus, a lawyer who knows
that a client has accidentally discharged toxic waste into a town's water
supply must reveal this information to the authorities if there is a
present and substantial risk that a person who drinks the water will
contract a life-threatening or debilitating disease and the lawyer's
disclosure is necessary to eliminate the threat or reduce the number of victims.

[7] [Reserved.]

[8] [Reserved.]

[9] A lawyer's confidentiality obligations do not preclude a lawyer from
securing confidential legal advice about the lawyer's personal
responsibility to comply with these Rules. In most situations, disclosing
information to secure such advice will be impliedly authorized for the
lawyer to carry out the representation. Even when the disclosure is not
impliedly authorized, paragraph (b)(4) permits such disclosure because of
the importance of a lawyer's compliance with the Rules of Professional Conduct.

[10] Where a legal claim or disciplinary charge alleges complicity of the
lawyer in a client's conduct or other misconduct of the lawyer involving
representation of the client, the lawyer may respond to the extent the
lawyer reasonably believes necessary to establish a defense. The same is
true with respect to a claim involving the conduct or representation of a
former client. Such a charge can arise in a civil, criminal, disciplinary
or other proceeding and can be based on a wrong allegedly committed by the
lawyer against the client or on a wrong alleged by a third person, for
example, a person claiming to have been defrauded by the lawyer and client
acting together. The lawyer's right to respond arises when an assertion of
such complicity has been made. Paragraph (b)(5) does not require the lawyer
to await the commencement of an action or proceeding that charges such
complicity, so that the defense may be established by responding directly
to a third party who has made such an assertion. The right to defend also
applies, of course, where a proceeding has been commenced.

[11] A lawyer entitled to a fee is permitted by paragraph (b)(5) to prove
the services rendered in an action to collect it. This aspect of the Rule
expresses the principle that the beneficiary of a fiduciary relationship
may not exploit it to the detriment of the fiduciary.

[12] [Reserved.]

[13] [Washington revision] A lawyer may be ordered to reveal information
relating to the representation of a client by a court. Absent informed
consent of the client to do otherwise, the lawyer should assert on behalf
of the client all nonfrivolous claims that the information sought is
protected against disclosure by the attorney-client privilege or other
applicable law. In the event of an adverse ruling, the lawyer must consult
with the client about the possibility of appeal to the extent required by
Rule 1.4. Unless review is sought, however, paragraph (b)(6) permits the
lawyer to comply with the court's order.

See also Washington Comment [24].

[14] Paragraph (b) permits disclosure only to the extent the lawyer
reasonably believes the disclosure is necessary to accomplish one of the
purposes specified. Where practicable, the lawyer should first seek to
persuade the client to take suitable action to obviate the need for
disclosure. In any case, a disclosure adverse to the client's interest

should be no greater than the lawyer reasonably believes necessary to accomplish the purpose. If the disclosure will be made in connection with a judicial proceeding, the disclosure should be made in a manner that limits access to the information to the tribunal or other persons having a need to know it and appropriate protective orders or other arrangements should be sought by the lawyer to the fullest extent practicable.

[15] [Washington revision] Paragraphs (b)(2) through (b)(7) permit but do not require the disclosure of information relating to a client's representation to accomplish the purposes specified in those paragraphs. In exercising the discretion conferred by those paragraphs, the lawyer may consider such factors as the nature of the lawyer's relationship with the client and with those who might be injured by the client, the lawyer's own involvement in the transaction and factors that may extenuate the conduct in question. A lawyer's decision not to disclose as permitted by paragraph (b) does not violate this Rule. Disclosure may be required, however, by other Rules. Some Rules require disclosure only if such disclosure would be permitted by paragraph (b). See Rules 1.2(d), 3.3, 4.1(b), and 8.1. See also Rule 1.13(c), which permits disclosure in some circumstances whether or not Rule 1.6 permits the disclosure.

See also Washington Comment [23].

Acting Competently to Preserve Confidentiality

[16] A lawyer must act competently to safeguard information relating to the representation of a client against inadvertent or unauthorized disclosure by the lawyer or other persons who are participating in the representation of the client or who are subject to the lawyer's supervision. See Rules 1.1, 5.1 and 5.3.

[17] When transmitting a communication that includes information relating to the representation of a client, the lawyer must take reasonable precautions to prevent the information from coming into the hands of unintended recipients. This duty, however, does not require that the lawyer use special security measures if the method of communication affords a reasonable expectation of privacy. Special circumstances, however, may warrant special precautions. Factors to be considered in determining the reasonableness of the lawyer's expectation of confidentiality include the sensitivity of the information and the extent to which the privacy of the communication is protected by law or by a confidentiality agreement. A client may require the lawyer to implement special security measures not required by this Rule or may give informed consent to the use of a means of communication that would otherwise be prohibited by this Rule.

Former Client

[18] The duty of confidentiality continues after the client-lawyer relationship has terminated. See Rule 1.9(c)(2). See Rule 1.9(c)(1) for the prohibition against using such information to the disadvantage of the former client.

Additional Washington Comments (19 ? 26)

[19] The phrase "information relating to the representation" should be interpreted broadly. The "information" protected by this Rule includes, but is not necessarily limited to, confidences and secrets. "Confidence" refers to information protected by the attorney client privilege under applicable law, and "secret" refers to other information gained in the professional relationship that the client has requested be held inviolate or the

disclosure of which would be embarrassing or would be likely to be detrimental to the client.

Disclosure Adverse to Client

   [20] Washington's Rule 1.6(b)(2), which authorizes disclosure to prevent a client from committing a crime, is significantly broader than the corresponding exception in the Model Rule. While the Model Rule permits a lawyer to reveal information relating to the representation to prevent the client from "committing a crime . . . that is reasonably certain to result in substantial injury to the financial interests or property of another and in furtherance of which the client has used the lawyer's services," Washington's Rule permits the lawyer to reveal such information to prevent the commission of any crime.

   [21] [Reserved.]

   [22] [Reserved.]

   [23] The exceptions to the general rule prohibiting unauthorized disclosure of information relating to the representation "should not be carelessly invoked." In re Boelter, 139 Wn.2d 81, 91, 985 P.2d 328 (1999). A lawyer must make every effort practicable to avoid unnecessary disclosure of information relating to a representation, to limit disclosure to those having the need to know it, and to obtain protective orders or make other arrangements minimizing the risk of avoidable disclosure.

   [24] Washington has not adopted that portion of Model Rule 1.6(b)(6) permitting a lawyer to reveal information related to the representation to comply with "other law." Washington's omission of this phrase arises from a concern that it would authorize the lawyer to decide whether a disclosure is required by "other law," even though the right to confidentiality and the right to waive confidentiality belong to the client. The decision to waive confidentiality should only be made by a fully informed client after consultation with the client's lawyer or by a court of competent jurisdiction. Limiting the exception to compliance with a court order protects the client's interest in maintaining confidentiality while insuring that any determination about the legal necessity of revealing confidential information will be made by a court. It is the need for a judicial resolution of such issues that necessitates the omission of "other law" from this Rule.

Withdrawal

   [25] After withdrawal the lawyer is required to refrain from disclosing the client's confidences, except as otherwise permitted by Rules 1.6 or 1.9. A lawyer is not prohibited from giving notice of the fact of withdrawal by this Rule, Rule 1.8(b), or Rule 1.9(c). If the lawyer's services will be used by the client in furthering a course of criminal or fraudulent conduct, the lawyer must withdraw. See Rule 1.16(a)(1). Upon withdrawal from the representation in such circumstances, the lawyer may also disaffirm or withdraw any opinion, document, affirmation, or the like. If the client is an organization, the lawyer may be in doubt about whether contemplated conduct will actually be carried out by the organization. When a lawyer requires guidance about compliance with this Rule in connection with an organizational client, the lawyer may proceed under the provisions of Rule 1.13(b).

Other

Washington Courts

[26] This Rule does not relieve a lawyer of his or her obligations under Rule 5.4(b) of the Rules for Enforcement of Lawyer Conduct.

[Amended effective September 1, 2006.]

Courts | Organizations | News | Opinions | Rules | Forms | Directory | Library
Back to Top | Privacy and Disclaimer Notices





Courts Home  |  Court Rules                    Search | Site Map | ⓘ eService Center

RPC RULE 1.7
CONFLICT OF INTEREST; CURRENT CLIENTS

(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

(1) the representation of one client will be directly adverse to another client; or

(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

(b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:

(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

(2) the representation is not prohibited by law;

(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and

(4) each affected client gives informed consent, confirmed in writing (following authorization from the other client to make any required disclosures).

Comment

General Principles

[1] Loyalty and independent judgment are essential elements in the lawyer's relationship to a client. Concurrent conflicts of interest can arise from the lawyer's responsibilities to another client, a former client or a third person or from the lawyer's own interests. For specific Rules regarding certain concurrent conflicts of interest, see Rule 1.8. For former client conflicts of interest, see Rule 1.9. For conflicts of interest involving prospective clients, see Rule 1.18. For definitions of "informed consent" and "confirmed in writing," see Rule 1.0(e) and (b).

[2] Resolution of a conflict of interest problem under this Rule requires the lawyer to: 1) clearly identify the client or clients; 2) determine whether a conflict of interest exists; 3) decide whether the representation may be undertaken despite the existence of a conflict, i.e., whether the conflict is consentable; and 4) if so, consult with the clients affected under paragraph (a) and obtain their informed consent, confirmed in writing. The clients affected under paragraph (a) include both of the clients referred to in paragraph (a)(1) and the one or more clients whose

representation might be materially limited under paragraph (a)(2).

[3] A conflict of interest may exist before representation is undertaken, in which event the representation must be declined, unless the lawyer obtains the informed consent of each client under the conditions of paragraph (b). To determine whether a conflict of interest exists, a lawyer should adopt reasonable procedures, appropriate for the size and type of firm and practice, to determine in both litigation and non-litigation matters the persons and issues involved. See also Comment to Rule 5.1. Ignorance caused by a failure to institute such procedures will not excuse a lawyer's violation of this Rule. As to whether a client-lawyer relationship exists or, having once been established, is continuing, see Comment to Rule 1.3 and Scope.

[4] If a conflict arises after representation has been undertaken, the lawyer ordinarily must withdraw from the representation, unless the lawyer has obtained the informed consent of the client under the conditions of paragraph (b). See Rule 1.16. Where more than one client is involved, whether the lawyer may continue to represent any of the clients is determined both by the lawyer's ability to comply with duties owed to the former client and by the lawyer's ability to represent adequately the remaining client or clients, given the lawyer's duties to the former client. See Rule 1.9. See also Comments [5] and [29].

[5] Unforeseeable developments, such as changes in corporate and other organizational affiliations or the addition or realignment of parties in litigation, might create conflicts in the midst of a representation, as when a company sued by the lawyer on behalf of one client is bought by another client represented by the lawyer in an unrelated matter. Depending on the circumstances, the lawyer may have the option to withdraw from one of the representations in order to avoid the conflict. The lawyer must seek court approval where necessary and take steps to minimize harm to the clients. See Rule 1.16. The lawyer must continue to protect the confidences of the client from whose representation the lawyer has withdrawn. See Rule 1.9(c).

See also Washington Comment [36].

Identifying Conflicts of Interest: Directly Adverse

[6] Loyalty to a current client prohibits undertaking representation directly adverse to that client without that client's informed consent. Thus, absent consent, a lawyer may not act as an advocate in one matter against a person the lawyer represents in some other matter, even when the matters are wholly unrelated. The client as to whom the representation is directly adverse is likely to feel betrayed, and the resulting damage to the client-lawyer relationship is likely to impair the lawyer's ability to represent the client effectively. In addition, the client on whose behalf the adverse representation is undertaken reasonably may fear that the lawyer will pursue that client's case less effectively out of deference to the other client, i.e., that the representation may be materially limited by the lawyer's interest in retaining the current client. Similarly, a directly adverse conflict may arise when a lawyer is required to cross-examine a client who appears as a witness in a lawsuit involving another client, as when the testimony will be damaging to the client who is represented in the lawsuit. On the other hand, simultaneous representation in unrelated matters of clients whose interests are only economically adverse, such as representation of competing economic enterprises in unrelated litigation, does not ordinarily constitute a conflict of interest and thus may not require consent of the respective clients.

[7] Directly adverse conflicts can also arise in transactional matters. For example, if a lawyer is asked to represent the seller of a business in negotiations with a buyer represented by the lawyer, not in the same transaction but in another, unrelated matter, the lawyer could not undertake the representation without the informed consent of each client.

Identifying Conflicts of Interest: Material Limitation

[8] Even where there is no direct adverseness, a conflict of interest exists if there is a significant risk that a lawyer's ability to consider, recommend or carry out an appropriate course of action for the client will be materially limited as a result of the lawyer's other responsibilities or interests. For example, a lawyer asked to represent several individuals seeking to form a joint venture is likely to be materially limited in the lawyer's ability to recommend or advocate all possible positions that each might take because of the lawyer's duty of loyalty to the others. The conflict in effect forecloses alternatives that would otherwise be available to the client. The mere possibility of subsequent harm does not itself require disclosure and consent. The critical questions are the likelihood that a difference in interests will eventuate and, if it does, whether it will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client.

See also Washington Comment [37].

Lawyer's Responsibilities to Former Clients and Other Third Persons

[9] In addition to conflicts with other current clients, a lawyer's duties of loyalty and independence may be materially limited by responsibilities to former clients under Rule 1.9 or by the lawyer's responsibilities to other persons, such as fiduciary duties arising from a lawyer's service as a trustee, executor or corporate director.

Personal Interest Conflicts

[10] The lawyer's own interests should not be permitted to have an adverse effect on representation of a client. For example, if the probity of a lawyer's own conduct in a transaction is in serious question, it may be difficult or impossible for the lawyer to give a client detached advice. Similarly, when a lawyer has discussions concerning possible employment with an opponent of the lawyer's client, or with a law firm representing the opponent, such discussions could materially limit the lawyer's representation of the client. In addition, a lawyer may not allow related business interests to affect representation, for example, by referring clients to an enterprise in which the lawyer has an undisclosed financial interest. See Rule 1.8 for specific Rules pertaining to a number of personal interest conflicts, including business transactions with clients. See also Rule 1.10 (personal interest conflicts under Rule 1.7 ordinarily are not imputed to other lawyers in a law firm).

[11] [Washington revision] When lawyers representing different clients in the same matter or in substantially related matters are related as parent, child, sibling, or spouse, or if the lawyers have some other close familial relationship or if the lawyers are in a personal intimate relationship with one another, there may be a significant risk that client confidences will be revealed and that the lawyer's family or other familial or intimate relationship will interfere with both loyalty and independent professional judgment. See Rule 1.8(l). As a result, each client is entitled to know of

the existence and implications of the relationship between the lawyers before the lawyer agrees to undertake the representation. Thus, a lawyer so related to another lawyer ordinarily may not represent a client in a matter where that lawyer is representing another party, unless each client gives informed consent. The disqualification arising from such relationships is personal and ordinarily is not imputed to members of firms with whom the lawyers are associated. See Rules 1.8(k) and 1.10.

[12] [Reserved.]

Interest of Person Paying for a Lawyer's Service

[13] A lawyer may be paid from a source other than the client, including a co-client, if the client is informed of that fact and consents and the arrangement does not compromise the lawyer's duty of loyalty or independent judgment to the client. See Rule 1.8(f). If acceptance of the payment from any other source presents a significant risk that the lawyer's representation of the client will be materially limited by the lawyer's own interest in accommodating the person paying the lawyer's fee or by the lawyer's responsibilities to a payer who is also a co-client, then the lawyer must comply with the requirements of paragraph (b) before accepting the representation, including determining whether the conflict is consentable and, if so, that the client has adequate information about the material risks of the representation.

Prohibited Representations

[14] Ordinarily, clients may consent to representation notwithstanding a conflict. However, as indicated in paragraph (b), some conflicts are nonconsentable, meaning that the lawyer involved cannot properly ask for such agreement or provide representation on the basis of the client's consent. When the lawyer is representing more than one client, the question of consentability must be resolved as to each client.

[15] Consentability is typically determined by considering whether the interests of the clients will be adequately protected if the clients are permitted to give their informed consent to representation burdened by a conflict of interest. Thus, under paragraph (b)(1), representation is prohibited if in the circumstances the lawyer cannot reasonably conclude that the lawyer will be able to provide competent and diligent representation.

See Rule 1.1 (Competence) and Rule 1.3 (Diligence).

[16] [Washington revision] Paragraph (b)(2) describes conflicts that are nonconsentable because the representation is prohibited by applicable law. For example, in some states substantive law provides that the same lawyer may not represent more than one defendant in a capital case, even with the consent of the clients, and under federal criminal statutes certain representations by a former government lawyer are prohibited, despite the informed consent of the former client. In addition, decisional law in some states other than Washington limits the ability of a governmental client, such as a municipality, to consent to a conflict of interest. See Washington Comment [38].

[17] Paragraph (b)(3) describes conflicts that are nonconsentable because of the institutional interest in vigorous development of each client's position when the clients are aligned directly against each other in the same litigation or other proceeding before a tribunal. Whether clients are aligned directly against each other within the meaning of this paragraph requires examination of the context of the proceeding. Although this

paragraph does not preclude a lawyer's multiple representation of adverse parties to a mediation (because mediation is not a proceeding before a "tribunal" under Rule 1.0(m)), such representation may be precluded by paragraph (b)(1).

See also Washington Comment [38].

Informed Consent

[18] Informed consent requires that each affected client be aware of the relevant circumstances and of the material and reasonably foreseeable ways that the conflict could have adverse effects on the interests of that client. See Rule 1.0(e) (informed consent). The information required depends on the nature of the conflict and the nature of the risks involved. When representation of multiple clients in a single matter is undertaken, the information must include the implications of the common representation, including possible effects on loyalty, confidentiality and the attorney-client privilege and the advantages and risks involved. See Comments [30] and [31] (effect of common representation on confidentiality).

[19] Under some circumstances it may be impossible to make the disclosure necessary to obtain consent. For example, when the lawyer represents different clients in related matters and one of the clients refuses to consent to the disclosure necessary to permit the other client to make an informed decision, the lawyer cannot properly ask the latter to consent. In some cases the alternative to common representation can be that each party may have to obtain separate representation with the possibility of incurring additional costs. These costs, along with the benefits of securing separate representation, are factors that may be considered by the affected client in determining whether common representation is in the client's interests.

See also Washington Comment [39].

Consent Confirmed in Writing

[20] Paragraph (b) requires the lawyer to obtain the informed consent of the client, confirmed in writing. Such a writing may consist of a document executed by the client or one that the lawyer promptly records and transmits to the client following an oral consent. See Rule 1.0(b). See also Rule 1.0(n) (writing includes electronic transmission). If it is not feasible to obtain or transmit the writing at the time the client gives informed consent, then the lawyer must obtain or transmit it within a reasonable time thereafter. See Rule 1.0(b). The requirement of a writing does not supplant the need in most cases for the lawyer to talk with the client, to explain the risks and advantages, if any, of representation burdened with a conflict of interest, as well as reasonably available alternatives, and to afford the client a reasonable opportunity to consider the risks and alternatives and to raise questions and concerns. Rather, the writing is required in order to impress upon clients the seriousness of the decision the client is being asked to make and to avoid disputes or ambiguities that might later occur in the absence of a writing.

Revoking Consent

[21] A client who has given consent to a conflict may revoke the consent and, like any other client, may terminate the lawyer's representation at any time. Whether revoking consent to the client's own representation precludes the lawyer from continuing to represent other clients depends on the circumstances, including the nature of the conflict, whether the client

revoked consent because of a material change in circumstances, the reasonable expectations of the other client and whether material detriment to the other clients or the lawyer would result.

Consent to Future Conflict

[22] [Reserved.]

Conflicts in Litigation

[23] Paragraph (b)(3) prohibits representation of opposing parties in the same litigation, regardless of the clients' consent. On the other hand, simultaneous representation of parties whose interests in litigation may conflict, such as coplaintiffs or codefendants, is governed by paragraph (a)(2). A conflict may exist by reason of substantial discrepancy in the parties' testimony, incompatibility in positions in relation to an opposing party or the fact that there are substantially different possibilities of settlement of the claims or liabilities in question. Such conflicts can arise in criminal cases as well as civil. The potential for conflict of interest in representing multiple defendants in a criminal case is so grave that ordinarily a lawyer should decline to represent more than one codefendant. On the other hand, common representation of persons having similar interests in civil litigation is proper if the requirements of paragraph (b) are met.

[24] Ordinarily a lawyer may take inconsistent legal positions in different tribunals at different times on behalf of different clients. The mere fact that advocating a legal position on behalf of one client might create precedent adverse to the interests of a client represented by the lawyer in an unrelated matter does not create a conflict of interest. A conflict of interest exists, however, if there is a significant risk that a lawyer's action on behalf of one client will materially limit the lawyer's effectiveness in representing another client in a different case; for example, when a decision favoring one client will create a precedent likely to seriously weaken the position taken on behalf of the other client. Factors relevant in determining whether the clients need to be advised of the risk include: where the cases are pending, whether the issue is substantive or procedural, the temporal relationship between the matters, the significance of the issue to the immediate and long-term interests of the clients involved and the clients' reasonable expectations in retaining the lawyer. If there is significant risk of material limitation, then absent informed consent of the affected clients, the lawyer must refuse one of the representations or withdraw from one or both matters.

[25] When a lawyer represents or seeks to represent a class of plaintiffs or defendants in a class-action lawsuit, unnamed members of the class are ordinarily not considered to be clients of the lawyer for purposes of applying paragraph (a)(1) of this Rule. Thus, the lawyer does not typically need to get the consent of such a person before representing a client suing the person in an unrelated matter. Similarly, a lawyer seeking to represent an opponent in a class action does not typically need the consent of an unnamed member of the class whom the lawyer represents in an unrelated matter.

Nonlitigation Conflicts

[26] Conflicts of interest under paragraphs (a)(1) and (a)(2) arise in contexts other than litigation. For a discussion of directly adverse conflicts in transactional matters, see Comment [7]. Relevant factors in determining whether there is significant potential for material limitation

include the duration and intimacy of the lawyer's relationship with the client or clients involved, the functions being performed by the lawyer, the likelihood that disagreements will arise and the likely prejudice to the client from the conflict. The question is often one of proximity and degree. See Comment [8].

[27] For example, conflict questions may arise in estate planning and estate administration. A lawyer may be called upon to prepare wills for several family members, such as husband and wife, and, depending upon the circumstances, a conflict of interest may be present. In estate administration the identity of the client may be unclear under the law of a particular jurisdiction. Under one view, the client is the fiduciary; under another view the client is the estate or trust, including its beneficiaries. In order to comply with conflict of interest rules, the lawyer should make clear the lawyer's relationship to the parties involved.

[28] Whether a conflict is consentable depends on the circumstances. For example, a lawyer may not represent multiple parties to a negotiation whose interests are fundamentally antagonistic to each other, but common representation is permissible where the clients are generally aligned in interest even though there is some difference in interest among them. Thus, a lawyer may seek to establish or adjust a relationship between clients on an amicable and mutually advantageous basis; for example, in helping to organize a business in which two or more clients are entrepreneurs, working out the financial reorganization of an enterprise in which two or more clients have an interest or arranging a property distribution in settlement of an estate. The lawyer seeks to resolve potentially adverse interests by developing the parties' mutual interests. Otherwise, each party might have to obtain separate representation, with the possibility of incurring additional cost, complication or even litigation. Given these and other relevant factors, the clients may prefer that the lawyer act for all of them.
    See also Washington Comment [40].

Special Considerations in Common Representation

[29] In considering whether to represent multiple clients in the same matter, a lawyer should be mindful that if the common representation fails because the potentially adverse interests cannot be reconciled, the result can be additional cost, embarrassment and recrimination. Ordinarily, the lawyer will be forced to withdraw from representing all of the clients if the common representation fails. In some situations, the risk of failure is so great that multiple representation is plainly impossible. For example, a lawyer cannot undertake common representation of clients where contentious litigation or negotiations between them are imminent or contemplated. Moreover, because the lawyer is required to be impartial between commonly represented clients, representation of multiple clients is improper when it is unlikely that impartiality can be maintained. Generally, if the relationship between the parties has already assumed antagonism, the possibility that the clients' interests can be adequately served by common representation is not very good. Other relevant factors are whether the lawyer subsequently will represent both parties on a continuing basis and whether the situation involves creating or terminating a relationship between the parties.

[30] A particularly important factor in determining the appropriateness of common representation is the effect on client-lawyer confidentiality and the attorney-client privilege. With regard to the attorney-client privilege, the prevailing rule is that, as between commonly represented clients, the privilege does not attach. Hence, it must be assumed that if litigation eventuates between the clients, the privilege will not protect

any such communications, and the clients should be so advised.

[31] As to the duty of confidentiality, continued common representation will almost certainly be inadequate if one client asks the lawyer not to disclose to the other client information relevant to the common representation. This is so because the lawyer has an equal duty of loyalty to each client, and each client has the right to be informed of anything bearing on the representation that might affect that client's interests and the right to expect that the lawyer will use that information to that client's benefit. See Rule 1.4. The lawyer should, at the outset of the common representation and as part of the process of obtaining each client's informed consent, advise each client that information will be shared and that the lawyer will have to withdraw if one client decides that some matter material to the representation should be kept from the other. In limited circumstances, it may be appropriate for the lawyer to proceed with the representation when the clients have agreed, after being properly informed, that the lawyer will keep certain information confidential. For example, the lawyer may reasonably conclude that failure to disclose one client's trade secrets to another client will not adversely affect representation involving a joint venture between the clients and agree to keep that information confidential with the informed consent of both clients.

[32] When seeking to establish or adjust a relationship between clients, the lawyer should make clear that the lawyer's role is not that of partisanship normally expected in other circumstances and, thus, that the clients may be required to assume greater responsibility for decisions than when each client is separately represented. Any limitations on the scope of the representation made necessary as a result of the common representation should be fully explained to the clients at the outset of the representation. See Rule 1.2(c).

[33] Subject to the above limitations, each client in the common representation has the right to loyal and diligent representation and the protection of Rule 1.9 concerning the obligations to a former client. The client also has the right to discharge the lawyer as stated in Rule 1.16.
See also Washington Comment [41].

Organizational Clients

[34] A lawyer who represents a corporation or other organization does not, by virtue of that representation, necessarily represent any constituent or affiliated organization, such as a parent or subsidiary. See Rule 1.13(a). Thus, the lawyer for an organization is not barred from accepting representation adverse to an affiliate in an unrelated matter, unless the circumstances are such that the affiliate should also be considered a client of the lawyer, there is an understanding between the lawyer and the organizational client that the lawyer will avoid representation adverse to the client's affiliates, or the lawyer's obligations to either the organizational client or the new client are likely to limit materially the lawyer's representation of the other client.

[35] A lawyer for a corporation or other organization who is also a member of its board of directors should determine whether the responsibilities of the two roles may conflict. The lawyer may be called on to advise the corporation in matters involving actions of the directors. Consideration should be given to the frequency with which such situations may arise, the potential intensity of the conflict, the effect of the lawyer's resignation from the board and the possibility of the corporation's obtaining legal advice from another lawyer in such

situations. If there is material risk that the dual role will compromise
the lawyer's independence of professional judgment, the lawyer should not
serve as a director or should cease to act as the corporation's lawyer when
conflicts of interest arise. The lawyer should advise the other members of
the board that in some circumstances matters discussed at board meetings
while the lawyer is present in the capacity of director might not be
protected by the attorney-client privilege and that conflict of interest
considerations might require the lawyer's recusal as a director or might
require the lawyer and the lawyer's firm to decline representation of the
corporation in a matter.

Additional Washington Comments (36 - 41)

General Principles

   [36] Notwithstanding Comment (3), lawyers providing short-term limited
legal services to a client under the auspices of a program sponsored by a
nonprofit organization or court are not normally required to systematically
screen for conflicts of interest before undertaking a representation. See
Comment [1] to Rule 6.5. See Rule 1.2(c) for requirements applicable to the
provision of limited legal services.

Identifying Conflicts of Interest: Material Limitation

   [37] Use of the term "significant risk" in paragraph (a)(2) is not
intended to be a substantive change or diminishment in the standard
required under former Washington RPC 1.7(b), i.e., that "the representation
of the client may be materially limited by the lawyer's responsibilities
to another client or to a third person, or by the lawyer's own interests."

Prohibited Representations

   [38] In Washington, a governmental client is not prohibited from
properly consenting to a representational conflict of interest.

Informed Consent

   [39] Paragraph (b)(4) of the Rule differs slightly from the Model Rule
in that it expressly requires authorization from the other client before
any required disclosure of information relating to that client can be made.
Authorization to make a disclosure of information relating to the
representation requires the client's informed consent. See Rule 1.6(a).

Nonlitigation Conflicts

   [40] Under Washington case law, in estate administration matters the
client is the personal representative of the estate.
Special Considerations in Common Representation

   [41] Various legal provisions, including constitutional, statutory and
common law, may define the duties of government lawyers in representing
public officers, employees, and agencies and should be considered in
evaluating the nature and propriety of common representation.


[Amended effective September 1, 2006.]

Courts | Organizations | News | Opinions | Rules | Forms | Directory | Library
Back to Top | Privacy and Disclaimer Notices

http://www.courts.wa.gov/court_rules/?fa=court_rules.display&group=ga&set=RPC&ruleid...   5/9/2007

Ex A - p. 032



Courts Home  |  Court Rules



Search | Site Map |   eService Center

RPC RULE 1.15A
SAFEGUARDING PROPERTY

(a) This Rule applies to (1) property of clients or third persons in a lawyer's possession in connection with a representation and (2) escrow and other funds held by a lawyer incident to the closing of any real estate or personal property.

(b) A lawyer must not use, convert, borrow or pledge client or third person property for the lawyer's own use.

(c) A lawyer must hold property of clients and third persons separate from the lawyer's own property.

(1)  A lawyer must deposit and hold in a trust account funds subject to this Rule pursuant to paragraph (h) of this Rule.

(2)  A lawyer  must identify, label and appropriately safeguard  any property  of clients or third persons other than funds. The lawyer must keep records of such property that identify the property, the client or third person, the date of receipt and the location of safekeeping. The lawyer must preserve the records for seven years after return of the property.

(d) A lawyer must promptly notify a client or third person of receipt of the client or third person's property.

(e) A lawyer must promptly provide a written accounting to a client or third person after distribution of property or upon request. A lawyer must provide at least annually a written accounting to a client or third person for whom the lawyer is holding property.

(f) Except as stated in this Rule, a lawyer must promptly pay or deliver to the client or third person the property which the client or third person is entitled to receive.

(g) If a lawyer possesses property in which two or more persons (one of which may be the lawyer) claim interests, the lawyer must maintain the property in trust until the dispute is resolved. The lawyer must promptly distribute all undisputed portions of the property. The lawyer must take reasonable action to resolve the dispute, including, when appropriate, interpleading the disputed funds.

(h) A lawyer must comply with the following for all trust accounts:

(1) No funds belonging to the lawyer may be deposited or retained in a trust account except as follows:

(i) funds to pay bank charges, but only in an amount reasonably sufficient for that purpose;

(ii) funds belonging in part to a client or third person and in

part presently or potentially to the lawyer must be deposited and retained in a trust account, but any portion belonging to the lawyer must be withdrawn at the earliest reasonable time; or

(iii) funds necessary to restore appropriate balances.

(2) A lawyer must keep complete records as required by Rule 1.15B.

(3) A lawyer may withdraw funds when necessary to pay client costs. The lawyer may withdraw earned fees only after giving reasonable notice to the client of the intent to do so, through a billing statement or other document.

(4) Receipts must be deposited intact.

(5) All withdrawals must be made only to a named payee and not to cash. Withdrawals must be made by check or by bank transfer.

(6) Trust account records must be reconciled as often as bank statements are generated or at least quarterly. The lawyer must reconcile the check register balance to the bank statement balance and reconcile the check register balance to the combined total of all client ledger records required by Rule 1.15B(a)(2).

(7) A lawyer must not disburse funds from a trust account until deposits have cleared the banking process and been collected, unless the lawyer and the bank have a written agreement by which the lawyer personally guarantees all disbursements from the account without recourse to the trust account.

(8) Disbursements on behalf of a client or third person may not exceed the funds of that person on deposit. The funds of a client or third person must not be used on behalf of anyone else.

(9) Only a lawyer admitted to practice law may be an authorized signatory on the account.

(i) Trust accounts must be interest-bearing and allow withdrawals or transfers without any delay other than notice periods that are required by law or regulation. In the exercise of ordinary prudence, a lawyer may select any bank, savings bank, credit union or savings and loan association that is insured by the Federal Deposit Insurance Corporation or National Credit Union Administration, is authorized by law to do business in Washington and has filed the agreement required by ELC 15.4. Trust account funds must not be placed in mutual funds, stocks, bonds, or similar investments.

(1) When client or third-person funds will not produce a positive net return to the client or third person because the funds are nominal in amount or expected to be held for a short period of time the funds must be placed in a pooled interest-bearing trust account known as an Interest on Lawyer's Trust Account or IOLTA. The interest accruing on the IOLTA account, net of reasonable check and deposit processing charges which may only include items deposited charge, monthly maintenance fee, per item check charge, and per deposit charge, must be paid to the Legal Foundation of Washington. Any other fees and transaction costs must be paid by the lawyer.

(2) Client or third-person funds that will produce a positive net return to the client or third person must be placed in one of the

following unless the client or third person requests that the funds be deposited in an IOLTA account:

    (i) a separate interest-bearing trust account for the particular client or third person with earned interest paid to the client or third person; or

    (ii) a pooled interest-bearing trust account with sub-accounting that allows for computation of interest earned by each client or third person's funds with the interest paid to the appropriate client or third person.

    (3) In determining whether to use the account specified in paragraph (i)(1) or an account specified in paragraph (i)(2), a lawyer must consider only whether the funds will produce a positive net return to the client or third person, as determined by the following factors:

    (i) the amount of interest the funds would earn based on the current rate of interest and the expected period of deposit;

    (ii) the cost of establishing and administering the account, including the cost of the lawyer's services and the cost of preparing any tax reports required for interest accruing to a client or third person's benefit; and

    (iii) the capability of financial institutions to calculate and pay interest to individual clients or third persons if the account in paragraph (i)(2)(ii) is used.

    (4) As to IOLTA accounts created under paragraph (i)(1), lawyers or law firms must direct the depository institution:

    (i) to remit interest or dividends, net of charges authorized by paragraph (i)(1), on the average monthly balance in the account, or as otherwise computed in accordance with an institution's standard accounting practice, monthly, to the Legal Foundation of Washington;

    (ii) to transmit with each remittance to the Foundation a statement, on a form authorized by the Washington State Bar Association, showing details about the account, including but not limited to the name of the lawyer or law firm for whom the remittance is sent, the rate of interest applied, and the amount of service charges deducted, if any, and the balance used to compute the interest, with a copy of such statement to be transmitted to the depositing lawyer or law firm; and

    (iii) to bill fees and transaction costs not authorized by paragraph (i)(1) to the lawyer or law firm.

    (5) The provisions of paragraph (i) do not relieve a lawyer or law firm from any obligation imposed by these Rules.

    (j) The Legal Foundation of Washington must prepare an annual report to the Supreme Court of Washington that summarizes the Foundation's income, grants and operating expenses, implementation of its corporate purposes, and any problems arising in the administration of the program established by paragraph (i) of this Rule.

Washington Comments

[1] A lawyer must also comply with the recordkeeping rule for trust accounts, Rule 1.15B.

[2] Client funds include, but are not limited to, the following: legal fees and costs that have been paid in advance, funds received on behalf of a client, funds to be paid by a client to a third party through the lawyer, other funds subject to attorney and other liens, and payments received in excess of amounts billed for fees.

[3] This Rule applies to property held in any fiduciary capacity in connection with a representation, whether as trustee, agent, escrow agent, guardian, personal representative, executor, or otherwise.

[4] The inclusion of ethical obligations to third persons in the handling of trust funds and property is not intended to expand or otherwise affect existing law regarding a Washington lawyer's liability to third parties other than clients. See, e.g., Trask v. Butler, 123 Wn.2d 835, 872 P.2d 1080 (1994); Hetzel v. Parks, 93 Wn. App. 929, 971 P.2d 115 (1999).

[5] Property covered by this Rule includes original documents affecting legal rights such as wills or deeds.

[6] A lawyer has a duty to take reasonable steps to locate a client or third person for whom the lawyer is holding funds or property. If after taking reasonable steps, the lawyer is still unable to locate the client or third person, the lawyer should treat the funds as unclaimed property under the Uniform Unclaimed Property Act, RCW 63.29.

[7] A lawyer may not use as a trust account an account in which funds are periodically transferred by the bank between a trust account and an uninsured account or other account that would not qualify as a trust account under this Rule.

[8] If a lawyer accepts payment of an advanced fee deposit by credit card, the payment must be deposited directly into the trust account. It cannot be deposited into a general account and then transferred to the trust account. Similarly, credit card payments of earned fees cannot be deposited into the trust account and then transferred to another account.

[9] Under paragraph (g), the extent of the efforts that a lawyer is obligated to take to resolve a dispute depend on the amount in dispute, the availability of methods for alternative dispute resolution, and the likelihood of informal resolution.

[10] The requirement in paragraph (h)(4) that receipts must be deposited intact means that a lawyer cannot deposit one check or negotiable instrument into two or more accounts at the same time, commonly known as a split deposit.

[11] Paragraph (h)(7) permits Washington lawyers to enter into written agreements with the trust account financial institution to provide for disbursement of trust deposits prior to formal notice of dishonor or collection. In essence the trust account bank is agreeing to or has guaranteed a loan to the lawyer and the client for the amount of the trust deposit pending collection of that deposit from the institution upon which the instrument was written. A Washington lawyer may only enter into such an arrangement if 1) there is a formal written agreement between the attorney and the trust account institution, and 2) the trust account financial institution provides the lawyer with written assurance that in the event of dishonor of the deposited instrument or other difficulty in

collecting the deposited funds, the financial institution will not have recourse to the trust account to obtain the funds to reimburse the financial institution. A lawyer must never use one client's money to pay for withdrawals from the trust account on behalf of another client who is paid subject to the lawyer's guarantee. The trust account financial institution must agree that the institution will not seek to fund the guaranteed withdrawal from the trust account, but will instead look to the lawyer for payment of uncollectible funds. Any such agreement must ensure that the trust account funds or deposits of any other client's or third person's money into the trust account would not be affected by the guarantee.

[12] The Legal Foundation of Washington was established by Order of the Supreme Court of Washington.

[13] A lawyer may, but is not required to, notify the client of the intended use of funds paid to the Foundation.

[14] If the client or third person requests that funds that would be deposited in a separate interest-bearing account instead be held in the IOLTA account, the lawyer should document this request in the lawyer's trust account records and preferably should confirm the request in writing to the client or third person.

[15] A lawyer may not receive from financial institutions earnings credits or any other benefit from the financial institution based on the balance maintained in a trust account.

[Amended effective September 1, 2006.]



Courts Home  |  Court Rules



Search | Site Map | eService Center

RPC RULE 1.15B
REQUIRED TRUST ACCOUNT RECORDS

(a) A lawyer must maintain current trust account records. They may be in electronic or manual form and must be retained for at least seven years after the events they record. At minimum, the records must include the following:

(1) Checkbook register or equivalent for each trust account, including entries for all receipts, disbursements, and transfers, and containing at least:

(i) identification of the client matter for which trust funds were received, disbursed, or transferred;

(ii) the date on which trust funds were received, disbursed, or transferred;

(iii) the check number for each disbursement;

(iv) the payor or payee for or from which trust funds were received, disbursed, or transferred; and

(v) the new trust account balance after each receipt, disbursement, or transfer.

(2) Individual client ledger records containing either a separate page for each client or an equivalent electronic record showing all individual receipts, disbursements, or transfers, and also containing:

(i) identification of the purpose for which trust funds were received, disbursed, or transferred;

(ii) the date on which trust funds were received, disbursed or transferred;

(iii) the check number for each disbursement;

(iv) the payor or payee for or from which trust funds were received, disbursed, or transferred; and

(v) the new client fund balance after each receipt, disbursement, or transfer;

(3) Copies of any agreements pertaining to fees and costs;

(4) Copies of any statements or accountings to clients or third parties showing the disbursement of funds to them or on their behalf;

(5) Copies of bills for legal fees and expenses rendered to clients;

(6) Copies of invoices, bills or other documents supporting all disbursements or transfers from the trust account;

(7) Bank statements, copies of deposit slips, and cancelled checks or their equivalent;

(8) Copies of all trust account client ledger reconciliations; and

(9) Copies of those portions of clients' files that are reasonably necessary for a complete understanding of the financial transactions pertaining to them.

(b) Upon any change in the lawyer's practice affecting the trust account, including dissolution or sale of a law firm or suspension or other change in membership status, the lawyer must make appropriate arrangements for the maintenance of the records specified in this Rule.

Washington Comments

[1] Paragraph (a)(3) is not intended to require that fee agreements be in writing. That issue is governed by Rule 1.5.

[2] If trust records are computerized, a system of regular and frequent (preferably daily) back-up procedures is essential.

[3] Paragraph (a)(9) does not require a lawyer to retain the entire client file for a period of seven years, although many lawyers will choose to do so for other reasons. Rather, under this paragraph, the lawyer must retain only those portions of the file necessary for a complete understanding of the financial transactions. For example, if a lawyer received proceeds of a settlement on a client's behalf, the lawyer would need to retain a copy of the settlement agreement. In many cases, there will be nothing in the client file that needs to be retained other than the specific documents listed in paragraphs (a)(2)-(8).

[Amended effective September 1, 2006.]