The Honorable John C. Coughenour

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| VICTOR WASHINGTON,<br><br>    Plaintiff,<br><br>    v.<br><br>STARBUCKS CORPORATION,<br><br>    Defendant. | NO.   C08-1144-JCC<br><br><br><br>**ORDER** |

This matter comes before the Court on a third-party motion regarding an attorney lien (Dkt. No. 23), Plaintiff's response (Dkt. No. 25), and the third-party reply (Dkt. No. 33). Having reviewed the briefing and the associated declarations and submissions, the Court DENIES the motion, refusing to exercise its ancillary jurisdiction to adjudicate this matter.

**I.    BACKGROUND**

"Settlement agreements are designed to, and usually do, end litigation, not create it." *In re City Equities Anaheim, Ltd.*, 22 F.3d 954, 957 (9th Cir. 1994). In the case presently before the Court, a settlement agreement has generated not one, but two, separate controversies. The facts of the first controversy, between Plaintiff Victor Washington and Defendant Starbucks Corporation, are recounted in a previous order, and

ORDER, No. C08-1144-JCC
Page 1

need not be repeated here. *See* (Order (Dkt. No. 35)). The second controversy, which forms the basis of the motion now before the Court, deals with a dispute between Plaintiff and his former attorneys. The facts are as follows:

Attorneys Joyce Thomas and Jillian Cutler represented Plaintiff Victor Washington in this matter until May 2009, when they were discharged by Plaintiff. This Court granted the attorneys' motion to withdraw on May 18, 2009. (Dkt. No. 17). Even before that motion was granted, Thomas and Cutler filed a notice of attorney lien in the amount of $31,683.96. (Dkt. No. 13). The attorneys then filed a "motion regarding attorney's lien," asking this Court to order Defendant Starbucks to cancel its outstanding check for $120,000 to Plaintiff and place the disputed funds in the Court registry pending adjudication by this Court. (Att'y Motion (Dkt. No. 23)). In his responsive filing, Plaintiff acknowledged the propriety of the lien, as well as his "obligation under the law … to respect the claim of lien and to allow the liened item … to remain secure." (Pl. Response 9-10 (Dkt. No. 25)). However, Plaintiff also promised to vigorously contest any foreclosure action brought by the attorneys, arguing that they had charged an unreasonable fee in violation of the Washington Rules of Professional Conduct. *Id.* at 3-9. Finally, in their reply brief, the attorneys defended their fee structure and submitted copies of billing statements and records. (Dkt. Nos. 33 & 34). The Court interprets the attorneys' filings as a motion to foreclose the lien, as they have engaged in the merits by offering evidence.

## II. WASHINGTON LAW OF ATTORNEY LIENS

A lien places an encumbrance on property or funds. A lien is not self-executing: "In order to realize on a lien, absent agreement with the client, there must be an adjudication respecting the lien." Marjorie Rombauer, 27 WASHINGTON PRACTICE: CREDITORS' REMEDIES AND DEBTORS' RELIEF § 4.29 (2008). That adjudication need *not* occur at the court with jurisdiction over the dispute that gave rise to the lien itself: "[A]n attorney claimant may, after filing the lien, bring an action to foreclose and have the right to the lien

ORDER, No. C08-1144-JCC
Page 2

and its reasonableness determined *in any proper forum.*" *Id.* (emphasis added).

In Washington State, attorney liens are a creation of a statute. WASH. REV. CODE §§ 60.40.010–030. They have generated few cases, but much confusion. *See* Zach Elsner, Note, *Rethinking Attorney Liens: Why Washington Attorneys Are Forced Into "Involuntary" Pro Bono*, 27 SEATTLE U. L. REV. 827, 829 (2004) (noting that "only a few Washington cases have addressed attorney liens[,]" and that "ethical and judicial interpretations have transformed Washington's attorney lien statute into a confused and illogical body of law that frustrates the statute's purpose[.]"). *See also* Rombauer at § 4.21 (concluding that "the attorney lien statute leaves open many questions.").

In 2004, the Washington State Legislature amended the attorney lien statute for the first time since it was adopted by the Territorial Legislature in 1863. *See* 2004 Wash. Legis. Serv. ch. 73. Although the Legislature's stated purpose was only to "end double taxation of attorneys' fees obtained through judgments and settlements," the amendments made substantial textual revisions. One commentator noted that the amendments would do much more than affect tax status, and would "undoubtedly [have] some unintended consequences." *See* Deborah Brookings, *Strange Bedfellows: The New Washington Attorney Lien Statute and the* Blaney *Cases*, 58 WASH. ST. B. NEWS 19 (Dec. 2004). Ms. Brookings concluded her article with a series of unanswered questions directly relevant to this case:

> With respect to settlements, should defendants cut separate checks—one to the plaintiff and one to the plaintiff's attorney? Should the parties include in the language of the settlement agreement and release a specified amount that will be paid to the attorney? Should defendant obtain the signature of the attorney on the settlement agreement and release?

*Id.*

//

### III. FEDERAL JURISDICTION

Federal courts are courts of limited subject-matter jurisdiction. *See, e.g., Louisville & Nashville R.R.*

ORDER, No. C08-1144-JCC
Page 3

*v. Mottley*, 211 U.S. 149 (1908). There are two primary restrictions on federal judicial power: the cases and controversies requirement of Article III, and the requirement of a federal statute authorizing jurisdiction. These limitations on federal-court jurisdiction promote many important constitutional values, including respect for the independence of state judiciaries in the American federalist system. *See* Erwin Chemerinsky, FEDERAL JURISDICTION 266 (5th ed. 2007). The burden of establishing jurisdiction rests upon the party asserting jurisdiction. *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182–83 (1936). Subject-matter jurisdiction is non-consentable, and may be raised by the court *sua sponte. See Mottley*, 211 U.S. 149 (1908); *see also* Chemerinsky at 267–68.

Concerns about state judicial independence notwithstanding, federal courts often adjudicate state-law matters that are ancillary to the claims that meet the requirements of original federal jurisdiction. *See* 28 U.S.C. § 1367 ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."). The exercise of supplemental jurisdiction promotes important judicial values, like convenience and economy, by providing litigants with a single forum in which to resolve their entire dispute and avoiding wasteful uses of state-court resources. *See* Charles Wright & Arthur Miller, 13 FEDERAL PRACTICE AND PROCEDURE § 3523 (3d 2008). One of the most typical exercises of supplemental jurisdiction is the compulsory counterclaim, which "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim[.]" *See* FED. R. CIV. P. 13(a)(1).

Closely related to this concept of supplemental jurisdiction is *ancillary jurisdiction*, which allows a federal court to hear collateral proceedings that arise from transactions or occurrences *separate* from the facts of the original case. *Id.* § 3523.2. Federal courts exercise ancillary jurisdiction "for two separate, though sometimes related, purposes: (1) to permit disposition by a single court of claims that are, in varying

respects and degrees, factually interdependent; and (2) to enable a court to function successfully, that is to manage its proceedings, vindicate its authority, and effectuate its decrees." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 380 (1994) (internal citations omitted). Adjudications regarding attorney fees fall within a federal court's ancillary jurisdiction. *See* Wright & Miller § 3523.2.

It is clear that this Court has the authority to adjudicate many ancillary issues involving attorney fees. *See, e.g., Fed. Sav. & Loan Ins. Corp. v. Ferrante*, 364 F.3d 1037, 1041 ("Determining the legal fees a party to a lawsuit properly before the court owes its attorney, with respect to the work done in the suit being litigated, easily fits the concept of ancillary jurisdiction.") (dictum). It is equally clear that this Court may exercise its discretion to *refuse* to hear ancillary issues involving attorney fees. In fact, it is clear that this Court abuses its discretion to exercise such jurisdiction in some cases. In *Federal Savings & Loan*, the Ninth Circuit cited with approval the case of *Bounougias v. Peters*, 369 F.2d 247 (7th Cir. 1966), in which the appellate court reversed the district court for having improperly exercised ancillary jurisdiction in a dispute involving attorney fees. The court noted that the district court did not have to adjudicate the state-law claim to resolve the Article III case over which it had original jurisdiction:

> [T]hese proceedings do not relate to any matter which full justice, logic, or even convenience would have required a decision upon by the trial court as part of the original litigation. Whatever the result may finally be in this litigation, it will not make more complete or satisfactory or, indeed, even affect the judgment of the district in the negligence suit. Nor can it be said that this suit relates to matters coming so near to the life and dignity of the district court that an exercise of inherent powers to protect its authority was necessary.

*Id.* at 249. *See also* Wright & Miller § 3523.2 (collecting cases).

//

**IV.  DISCUSSION**

This Court refuses to adjudicate this matter. The typical justifications for ancillary jurisdiction, like promoting judicial economy and protecting the authority of the federal courts, do not attach here. This Court

ORDER, No. C08-1144-JCC
Page 5

is not especially acquainted with the efforts that attorneys Thomas and Cutler have expended on Washington's behalf, as they filed only a ten-page complaint and a six-page stipulated protective order before withdrawing from this case. It would not consume much of the Washington State Judiciary's resources to review these brief submissions, and a state-court judge would be equally competent to hold an evidentiary hearing at which evidence of their efforts could be submitted. Moreover, because this controversy has no relationship with the underlying dispute of employment discrimination between Plaintiff and Starbucks, it does not come "so near to the life and dignity" of this Court that an exercise of its inherent power is necessary to vindicate its authority. *See* 369 F.2d at 249.

The controversy between Plaintiff and his former attorneys presents difficult issues of unresolved state law, and would require this Court to tread upon an era uniquely reserved to the Washington State Judiciary: the supervision of the State Bar. The moving party asks this Court to interpret 2004 amendments that created "unintended consequences" to a statutory scheme previously criticized as "confused and illogical." *See* Brookings, *Strange Bedfellows*, 58 WASH. ST. B. NEWS 19 (Dec. 2004); Elsner, *Rethinking Attorney Liens*, 27 SEATTLE U. L. REV. 827, 829 (2004). The non-moving party, in turn, promises to "vigorously contest" this motion, and relies upon arguments that sound chiefly in the Washington State Rules of Professional Conduct. *See* (Pl. Response 4–8 (Dkt. No. 25)). The supervision of the Washington State Bar and the interpretation of the State Rules of Professional Conduct are uniquely the responsibility of the Washington courts. *See Matter of Washington State Bar Ass'n*, 548 P.2d 310, 315 (Wash. 1976) ("[T]he regulation of the practice of law in this state is within the inherent power of this court."); *see also* RESTATEMENT OF THE LAW GOVERNING LAWYERS (SECOND) § 1 Comment *c* (contrasting the plenary role of state high courts with the more limited supervision of the federal courts in the regulation of lawyering).

In sum, balancing supervisory responsibility over the State Bar with the 2004 amendments to the attorney lien statute are most appropriately handled by state-court judges, absent a compelling need

ORDER, No. C08-1144-JCC
Page 6

otherwise. No such need presents itself here. The aggrieved attorneys have filed notice of the lien with Defendant's counsel and with Plaintiff Victor Washington, and the state courts provide a competent forum in which to litigate foreclosure.

## V. CONCLUSION

The Court has reviewed the submissions associated with the third-party motion regarding an attorney lien (Dkt. No. 23). The Court DENIES the motion because of a jurisdictional defect.

DATED this 22nd day of September, 2009.

*[signature]*

JOHN C. COUGHENOUR
United States District Judge